# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0441
════════════

In re Michael N. Blair, Relator

════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════

Justice Boyd, joined as to Part IV by Justice Willett and Justice Lehrmann, concurring in the decision.

I cannot join Justice Hecht's construction of section 103.154(a) of the Tim Cole Act because I do not agree that it is "a linguistically reasonable alternative"; even if it does achieve a "just and reasonable result," the language the Legislature chose to use in section 103.154(a) simply will not support it. *Ante* at ___. But I agree that this petition for mandamus must be denied, albeit for a different reason: the petitioner failed to comply with the Act's mandatory procedural requirements. I therefore concur in the judgment denying the petition.

## I.
## Background

Michael Blair was arrested in 1993 and charged with the abduction and murder of a seven-year-old girl. Blair was out on parole at the time, following his convictions in 1988 for burglary of a habitation and sexual molestation of a child. After his 1993 arrest, the State revoked Blair's parole and required him to serve out the remainder of the sentences for his 1988 convictions. Although Blair claimed innocence, a jury convicted him of capital murder in September 1994. The trial court

imposed a death sentence, and Blair was placed on death row, where he also continued to serve his concurrent sentences for the 1988 convictions. The appellate courts affirmed Blair's murder conviction and death sentence, but he continued to seek habeas corpus relief throughout the ensuing years.

In 2002, while still on death row, Blair completed his concurrent sentences for the 1988 convictions. In 2003, while Blair continued his efforts to establish his innocence on the murder conviction, he voluntarily disclosed in interviews and letters that he was a serial child molester. In these confessions, Blair provided detailed descriptions of numerous sexual assaults of children and identified several of his victims. The district attorney then charged Blair with four counts of sexually molesting two of the children he identified. In 2004, Blair pleaded guilty to these charges and was given four life sentences, three of them to run consecutively. Thus, even if successful in his efforts to prove his innocence of capital murder and avoid the death penalty, he would likely remain in prison for the rest of his life.

Ultimately, DNA tests established that certain hairs and fibers that were crucial evidence in the murder case could not be associated with either Blair or the murder victim. On June 25, 2008, the Court of Criminal Appeals (CCA) issued an order granting Blair's petition for writ of habeas corpus, setting aside the murder conviction and sentence, and finding that Blair had "established by clear and convincing evidence that no reasonable juror would have convicted him in light of newly discovered evidence." *See Ex parte Blair*, Nos. AP–75954 and AP–75955, 2008 WL 2514174, at *1 (Tex. Crim. App. June 25, 2008) (per curiam) (not designated for publication). The trial court then granted the district attorney's motion to dismiss the charges and, on July 28, 2008, Blair was

2

transferred from death row to another correctional unit, where he continues to serve his four life sentences. The following time line summarizes the convictions for which Blair served in prison during the relevant periods:



| 1993 | 2002 | 2004 | 2008 | Life |
|---|---|---|---|---|
| serving for murder and 1988 convictions | serving for murder only | serving for murder & 2004 convictions | serving for 2004 convictions only | |

On July 10, 2009, Blair filed an application with the Comptroller's judiciary section requesting compensation under the Texas Wrongful Imprisonment Act, now known as the Tim Cole Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154. In his application, Blair acknowledged that he was not entitled to compensation "for any part of a sentence . . . during which [he] was also serving a concurrent sentence for another crime." *Id.* § 103.001(b). Yet he sought compensation from the date he was first arrested on the murder charge in 1993 until 2004, when he began serving the life sentences for sexually molesting children. At the then-applicable statutory rate of $100,000 per year, Blair requested payment of just over $1 million.[1]

Blair's application contained incorrect social security information, so he later filed additional documentation providing correct information. After receiving the additional documentation, the Comptroller agreed to treat the application as if Blair had submitted it on August 4, 2009, even though he had actually filed it nearly a month earlier. On September 18, 2009, the forty-fifth day

---

[1] Although Blair acknowledged that the 2007 version of the Act governed his request, he also requested lifetime annuity payments in an amount equal to the lump-sum payment, relying on recently enacted (but not yet effective) 2009 amendments. *See* Acts of May 27, 2009, 81st Leg., R.S., ch. 180, §§ 2, 14(b), 2009 Tex. Gen. Laws 523, 526.

after August 4, the Comptroller issued a determination denying Blair's application on the grounds that (1) the CCA's order did not establish that Blair obtained habeas relief based on actual innocence, and (2) the application did "not negate whether a concurrent sentence was served, either in prison or on parole, for another crime or crimes."

After receiving the Comptroller's denial, Blair's counsel obtained from the Texas Department of Criminal Justice (TDCJ) a corrected certificate of Blair's time served in prison and discovered, apparently for the first time, that the State had revoked Blair's parole on the 1988 convictions and thus Blair had served those sentences concurrently with the death sentence from 1993 until 2002. On September 22, 2009, Blair's counsel sent an email to the Comptroller, "formally" requesting an extension of the ten-day deadline to submit an application to cure. The following day, the Comptroller denied that request, noting that the statute did not give the Comptroller authority to grant such an extension.

On September 28, 2009, the tenth day after the Comptroller's denial of Blair's application for compensation, Blair filed a document entitled "Motion for Reconsideration of Denial of Compensation for Wrongful Incarceration and Submission of Newly Discovered Evidence" and a document entitled "Objection to Denial of Extension of Time for Curing of Record." In his motion for reconsideration, Blair challenged the Comptroller's denial of his application for compensation. Responding to the first ground for denial, Blair argued that the CCA's order did establish on its face that Blair was actually innocent of murder. Responding to the second ground, Blair attached the TDCJ's amended time credit certificate and acknowledged that, due to the parole revocation, Blair had concurrently served prison sentences for the 1988 convictions until 2002, and thus might only

4

be entitled to compensation for wrongful imprisonment from 2002 until 2004. But Blair argued that he was nevertheless entitled to "substantially more" than that because the State had revoked his parole only because of the wrongful arrest on the murder charge.

Shortly after Blair filed his motion for reconsideration, the Texas Board of Pardons and Paroles (at the urging of Blair's counsel) issued an order rescinding the 1993 parole revocation. On October 21, 2009, Blair's counsel submitted a copy of this order to the Comptroller, along with a document entitled "Motion to Reconsider Supplemental Curing Documents," arguing that, in light of the Board's order rescinding the parole revocation, Blair was entitled to compensation for 1993–2004, as he requested in his original application.

On November 9, 2009, forty-two days after Blair filed his second motion for reconsideration, the Comptroller issued a second determination, again denying Blair's application. In this determination, the Comptroller agreed to consider Blair's two motions for reconsideration as a single "application to cure" under the Act. But the Comptroller denied the claim on the ground that Blair was not eligible because, due to the 2004 convictions, Blair was "incarcerated and will remain so indefinitely" and, "[s]imply put, Mr. Blair currently is not a free man, as required by the Act."

Unlike her first determination, the Comptroller's second determination did not deny the claim on the ground that the CCA's order failed to establish Blair's actual innocence. She did, however, restate her position that, even if Blair were eligible, his "concurrent sentences for his 1988 crimes, regardless of whether his parole revocation for those crimes was recently rescinded, constitute a concurrent sentence for purposes of Section 103.001(b)," and thus he was not entitled to compensation for the time he concurrently served between 1993 and 2002. The Comptroller closed

5

the November 9 letter by inviting Blair to submit another application to cure: "Should Mr. Blair wish to submit another application to cure regarding this denial letter, he should do so not later than 10 days from the receipt of this denial letter, and the Comptroller's office will promptly reconsider any additional curing documents, if any, or further arguments that Mr. Blair may want to submit in light of the stated bases in this denial letter."

Nine days later, on November 18, 2009, Blair accepted the Comptroller's invitation and submitted a document entitled "Supplemental Motion to Cure." In this document, Blair argued that nothing in the plain language of the statute authorized the Comptroller to deny the claim on the ground that he is currently still imprisoned. In addition, Blair again argued that the amount of compensation should not be reduced due to the concurrent sentences Blair served from 1993–2002 following the revocation of parole for the 1988 crimes.

On December 30, 2009, forty-two days after Blair's November 18 submission, the Comptroller issued a third determination denying Blair's claim. This time, the Comptroller (as in her second determination) did not rely on the ground that the CCA order did not establish actual innocence and (unlike her first two determinations) did not address the concurrent sentences for the 1988 convictions. Instead, the Comptroller relied solely on the ground that Blair is "not a person entitled to compensation" because he remained imprisoned on the sexual molestation convictions. The Comptroller again reasoned that the Legislature "clearly intends Chapter 103 compensation to be provided only to eligible applicants in order that they might put their lives back together after their release," and that Blair is not eligible because he is "currently incarcerated and will remain so indefinitely."

6

On January 28, 2010, Blair filed a petition for writ of mandamus in this Court in Cause No. 10-0067, styled *In re Michael Nawee Blair*. In that petition, Blair argued that the Comptroller had erred in finding that his current imprisonment makes him ineligible for compensation and in finding that the statute prohibited compensation for the time he concurrently served for the 1988 convictions. We denied Blair's petition on April 9, 2010, and we denied his motion for rehearing on May 28, 2010. *See* 53 Tex. Sup. Ct. J. 564 (Apr. 9, 2010).

Nine months later, on March 4, 2011, we issued our decision in *In re Smith*, in which we held that the Act's "concurrent-sentence restriction does not apply when the wrongful conviction is the cause of the person serving a concurrent sentence in prison." 333 S.W.3d 582, 590 (Tex. 2011). As Blair points out, this holding was contrary to the Comptroller's position (stated in her first and second determinations, but not in her third) that, if Blair were eligible for compensation, he would not be eligible for the period from 1993–2002, when he was serving concurrent sentences for the 1988 convictions and the 2004 murder conviction.

On March 29, 2011, Blair filed a new application with the Comptroller, seeking compensation on the same bases on which he had relied in his previous submissions. In this application, which Blair referred to as his "second claim," Blair argued that "the law has been changed in a substantial manner by a Supreme Court decision." He urged that, "for justice and equity," the Comptroller should "reconsider petitioner's second claim" and reconsider "documents submitted in the *original* case for consideration of this claim." Specifically, he argued that the Comptroller's prior determination that any compensation must be reduced due to the concurrent sentence for the 1988 convictions was erroneous in light of our decision in *In re Smith*. Finally, he

7

asserted that the 2009 version of the Act governed this application and he was entitled to receive just over $850,000 under the amended compensation rate.

On May 13, 2011, the Comptroller issued a determination denying Blair's new claim on three grounds. First, the Comptroller noted that the new claim was "virtually identical" to the original claim and thus must be denied on the same grounds as the first. Second, the Comptroller reasoned that the new application was effectively a challenge to the denial of the first application, which had "already been fully adjudicated and finally resolved." Finally, the Comptroller asserted that *In re Smith* had "no bearing" on the Comptroller's decision because she based her determination not on any concurrent sentence but solely on the ground that, "as was stated in the Comptroller's final denial letter of December 30, 2009, . . . Blair was not a person entitled to compensation under Chapter 103."

Blair did not submit an application to cure in response to the May 13 denial. Instead, on June 9, 2011, he filed the petition for writ of mandamus that we address today. Blair challenges the Comptroller's denial of his second application on a single ground: his current imprisonment does not disqualify him from compensation for the time he served only under the wrongful conviction. The Comptroller disagrees with Blair's construction of the Act but also responds that the Comptroller did not have a duty to consider Blair's second application for the same compensation that the Comptroller previously denied.

## II.
## Standard of Review

"As Chapter 103 claims are entirely a statutory creation, we look to the words of the statute" to resolve those claims. *State v. Oakley*, 227 S.W.3d 58, 60 (Tex. 2007) (relying on statutory language to determine that Chapter 103 claims are not assignable). "The construction of a statute is a question of law that we review de novo," and "[o]ur task is to effectuate the Legislature's expressed intent." *In re Allen*, 366 S.W.3d 696, 703 (Tex. 2012). Our search for legislative intent begins with the statute's language: "Legislative intent is best revealed in legislative language." *In re Office of Att'y Gen.*,— S.W.3d —, —, 2013 WL 854785, at *4 (Tex. Mar. 8, 2013). When the statute's language is unambiguous and does not lead to absurd results, our search also ends there: "Where text is clear, text is determinative." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

We will not apply rules of construction or other extrinsic aids when the statute is not ambiguous. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999); *see City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language."). Instead, we take the Legislature at its word, as the truest measure of what it intended is what it enacted. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). This text-based approach requires us to study the language of the specific section at issue in the context of the statute as a whole. *In re Office of Att'y Gen.*, — S.W.3d at —, 2013 WL 854785, at *4; *Fitzgerald*, 996 S.W.2d at 866. We endeavor to give "effect to every word,

clause, and sentence." *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*,— S.W.3d —, —, 2012 WL 1759457, at *8 (Tex. May 18, 2012).

## III.
## The Tim Cole Act

In 1956, the people of Texas amended the Texas Constitution to authorize the legislature to "grant aid and compensation" to any person who has "paid a fine or served a sentence in prison . . . for an offense for which he or she is not guilty." TEX. CONST. art. III, § 51–c. The Legislature enacted the first wrongful imprisonment statute in 1965, and later codified it as the Texas Wrongful Imprisonment Act in Chapter 103 of the Civil Practices and Remedies Code. *See In re Allen*, 366 S.W.3d at 699–700; *In re Smith*, 333 S.W.3d at 585; *see also* TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154.

In 2001, the Legislature amended the Act in two ways that are pertinent to this appeal. First, it excluded from compensation any time served under a concurrent sentence for another crime for which the person was not wrongfully convicted. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280, 5283; TEX. CIV. PRAC. & REM. CODE § 103.001(b) ("A person is not entitled to compensation under Subsection (a) for any part of a sentence in prison during which the person was also serving a concurrent sentence for another crime to which Subsection (a) does not apply."). Second, it provided for termination of compensation payments "if, after the date the person becomes eligible for compensation under Section 103.001, the person is convicted of a crime punishable as a felony. Compensation payments terminate under this subsection on the date of the

10

subsequent conviction." *See* Act of May 18, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws at 5283; TEX. CIV. PRAC. & REM. CODE § 103.154.

When Blair first sought compensation in July 2009, the Act permitted a claimant to either administratively apply for compensation with the Comptroller's judiciary section or to file suit against the State in a court of competent jurisdiction. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280, 5283 (formerly TEX. CIV. PRAC. & REM CODE § 103.002 (repealed)) ("A person entitled to compensation . . . may proceed by following the provisions for administratively awarded compensation under Subchapter B or by filing suit under Subchapter C, but a person may not seek compensation under both Subchapters B and C."). That same year, the legislature amended the Act to remove the litigation option, leaving the administrative process as the only authorized procedure. *See* Act of May 11, 2009, 81st Leg., R.S., ch. 180, § 12(1), (2), 2009 TEX. GEN. LAWS 523, 526 (repealing section 103.002 and subchapter C). Although Blair could have filed a suit for compensation in July 2009, he elected to pursue his claim through the administrative process.

For the administrative process, the Act establishes detailed procedures by which a claimant may obtain benefits and services, and imposes certain duties on the Comptroller for the administration of these procedures. *See* TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154. To qualify for compensation, a claimant "must" file an application with the Comptroller "not later than the third anniversary of the date" the claimant received a pardon or was granted habeas corpus relief on the basis of innocence. *Id.* § 103.003. The claimant "must" file certain documents with the application, including a verified copy of the pardon or court order and a statement provided by the TDCJ

11

verifying the length of the incarceration. *Id.* § 103.051(a). Upon receipt of the application, the Comptroller "shall" determine the claimant's eligibility and the amount of any compensation owed, *id.* § 103.051(b), "shall" do so by considering only the verified documents that must accompany the application, *id.* § 103.051(b–1), and "must" do so "not later than the 45th day after the date the application is received." *Id.* § 103.051(c). The Comptroller's duty to determine eligibility is "purely ministerial." *Id.* § 103.051(b–1).

If the Comptroller determines that the claimant is eligible for compensation, she "shall" make the payment to the claimant, "to the extent that funds are available and appropriated for that purpose, not later than the 30th day after the date the comptroller grants the application." *Id.* § 103.151(a). If, on the other hand, the Comptroller denies the claim, she "must state the reason for the denial." *Id.* § 103.051(d). Then, under the version of the Act applicable to Blair's claim, the claimant "must" submit an application to cure "not later than the 10th day after the date the denial is received." *See* Act of May 18, 2011, 82nd Leg., R.S., ch. 698, § 5, 2011 TEX. GEN. LAWS 1663, 1665 (amending TEX. CIV. PRAC. & REM CODE § 103.051, which currently gives the claimant thirty days to submit an application to cure). The Comptroller "shall" then re-determine eligibility and the amounts owed "not later than the 45th day" after she receives the application to cure. *Id.* If the Comptroller denies the claim after the claimant submits an application to cure, the claimant "may" then bring an action for mandamus relief. *Id.* § 103.051(e). The mandamus action "must be filed in this Court because only the Supreme Court may issue a writ of mandamus against an officer of the executive department of this State, such as the Comptroller." *In re Smith*, 333 S.W.3d at 585.

## IV.
## The Impact of Other Convictions

The Comptroller contends that Blair is not eligible to receive any compensation because he has been convicted of child molestation, is currently imprisoned for those convictions, and will likely remain in prison for the rest of his life. According to the Comptroller, the purpose of the Act is to help released inmates rebuild their lives and reintegrate into society after they are released from prison, and this purpose would not be advanced by paying compensation to someone who is in prison for other crimes and will spend the rest of his life there. The Legislature could not have intended so absurd a result, the Comptroller continues, and therefore the Act cannot be read literally. Justice Hecht rejects this argument, pointing to several of the Act's provisions that demonstrate that helping the claimant reintegrate into society is not the Act's sole legislative purpose. On this point, I agree with Justice Hecht, for the reasons he has described.

But Justice Hecht goes on to hold that section 103.154(a) bars Blair from receiving compensation, and I do not agree with his construction of that section. Section 103.154(a) provides:

> [C]ompensation payments to a person . . . terminate if, after the date the person becomes eligible for compensation . . . , the person is convicted of a crime punishable as a felony. Compensation payments terminate under this subsection on the date of the subsequent conviction.

TEX. CIV. PRAC. & REM. CODE § 103.154(a).[2] Although neither Blair nor the Comptroller argues that

---

[2] This provision does not apply to compensation for child support payments and interest on child support arrearages. *Id.* § 103.154(a), (c).

section 103.154(a) applies in this case,[3] Justice Hecht concludes that this provision preemptively terminates Blair's right to compensation.[4] But that position cannot be squared with the statute's plain language. By its express terms, section 103.154(a) terminates compensation payments if the claimant is convicted of a felony "*after* the date the person becomes eligible for compensation." *Id.* (emphasis added). Because Blair was convicted of child molestation *before* he became eligible for compensation, there is no "subsequent conviction" to "terminate" his payments. I agree with the parties that section 103.154(a) does not apply. *See id.*

Justice Hecht contends that the phrase "is convicted" refers not "to the act of adjudication," but to the status of the claimant as a person who "stands convicted" of a felony. I agree that, under some circumstances, the phrase "is convicted" could reasonably be interpreted to mean "stands convicted," but not in the context of this statute. The statute states that payments "*terminate* if, *after* the date the person becomes eligible . . . the person *is convicted* of a crime punishable as a felony. Compensation payments terminate under this subsection on the date of the *subsequent conviction*." *Id.* (emphases added). For payments to "terminate," the payment process, or at least the right to receive payments, must have commenced in some form in the first place, and the terms "after" and "subsequent" clarify that a conviction that "terminates" the payments is one that has not yet occurred

---

[3] The Comptroller contends that "[s]ection 103.154(a) is irrelevant to Blair's claim" because Blair's current imprisonment renders him ineligible for compensation in the first place. Blair agrees that section 103.154(a) does not apply to him for the different reason that he was convicted of other crimes before he became eligible for compensation while section 103.154(a) only applies to an individual convicted of other crimes after becoming eligible for compensation.

[4] The compensation Blair seeks is paid through an annuity. *See* Tex. Civ. Prac. & Rem. Code § 103.053. If section 103.154(a) terminates payment of the annuity from the date of Blair's child molestation convictions, the annuity payments to Blair will never begin in the first place.

14

when the claimant becomes eligible to receive the payments. While Blair may "stand convicted" of child molestation after he became eligible to receive payments, his is not a "subsequent conviction" that occurred "after" his date of eligibility.

Thus, I disagree with Justice Hecht that section 103.154 "admits of two linguistically reasonable interpretations." *Ante* at __. While the phrase "is convicted" alone is subject to more than one reasonable interpretation, the statute as a whole is subject to only one. *See* TEX. CIV. PRAC. & REM CODE § 103.154; *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("Language cannot be interpreted apart from context. The meaning of a word that appears ambiguous when viewed in isolation may become clear when the word is analyzed in light of the terms that surround it."). If the Legislature intended to bar compensation for all claimants who had ever been convicted of a felony, whether before or after they become eligible for compensation, it could have done so and may still do so. But we may not read into the statute a legislative intent that is directly contrary to the language the Legislature selected and enacted into law. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (2010) ("[W]e must take statutes as we find them and first and primarily seek the Legislature's intent in its language. Courts are not responsible for omissions in legislation, but we are responsible for a true and fair interpretation of the law as it is written.") (internal citation omitted). Even if we believe the Legislature "may have made a mistake" in their wording of section 103.154(a), we "are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." *Id.* at 638. Though it may not be desirable under the circumstances of this

case, it is not absurd for the State to compensate Blair for the ten years he spent on death row for a murder he did not commit.

Importantly, the Legislature expressly prohibited claimants from receiving compensation for any time served when serving a sentence for another crime in addition to the crime of which the claimant is innocent. TEX. CIV. PRAC. & REM. CODE § 103.001(b). The Legislature has thus addressed the impact of other convictions that occur *before* the claimant becomes eligible for compensation, and has done so by denying compensation for the time served on those other convictions, not by denying eligibility for compensation completely. *See id.* Justice Hecht contends this construction of the statute, while "linguistically reasonable," has unreasonable consequences because it treats convictions differently depending on whether they occur before or after the date the person becomes eligible for compensation under the Tim Cole Act. *Ante* at __. He acknowledges that such a distinction could be reasonable in light of the deterrent effect termination of compensation could have on future crimes (but not past crimes), but then rejects that basis for the distinction on the ground that the statute does not indicate that the Legislature was so motivated. *Ante* at __.

But we must construe statutes based on the text the Legislature enacted, not on speculation about individual legislators' motivations. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 216 (1983) ("[I]nquiry into legislative motive is often an unsatisfactory venture. What motivates one legislator to vote for a statute is not necessarily what motivates scores of others to enact it.") (citation omitted). Moreover, reasonableness is not the standard for eschewing plain statutory language; rather, "[i]f a statute is worded clearly, we must

16

honor its plain language, unless that interpretation would lead to *absurd* results." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013) (emphasis added). Justice Hecht does not assert, and I do not think he reasonably could assert, that it would be absurd for the Act to distinguish between past and present crimes in deciding who may receive compensation. Even if this distinction "seems strange"—and I do not agree that it is an unusual or unreasonable distinction to make—"we read unambiguous statutes as they are written, not as they make the most policy sense." *Id.*

In light of the language of the statute, I conclude that Blair's 2004 convictions prohibit him from receiving compensation for time served beginning in 2004 but do not prohibit him from receiving compensation for time served prior to that date.

## V.
### Failure to Comply with
### Procedural Requirements

The Comptroller contends that we should deny Blair's petition for writ of mandamus because she did not abuse her discretion by denying Blair's second application. At least in the absence of a material change in circumstances, she argues, she was "under no duty to reconsider her denial of Blair's resubmitted claim" because "the Act clearly contemplates that, once a mandamus action is denied, as it was in Blair's case, the matter is ended, and no further proceedings on the same claim are contemplated." I agree, although I conclude that Blair's failure to comply with other procedural requirements also precludes his claim. This Court has previously observed that a Tim Cole Act claimant is "*required* to follow certain statutory procedures to obtain compensation," *In re Smith*, 333 S.W.3d at 585 (emphasis added), but we have not had occasion to address these procedures in detail. As I read the language of the statute, Blair cannot receive the compensation that he seeks

17

because (1) he repeatedly failed to comply with the Act's procedural requirements and deadlines, which are mandatory and are the exclusive means for obtaining compensation under the Act and for obtaining judicial review of the Comptroller's eligibility determination, and (2) the Act's application-for-compensation procedure does not authorize multiple applications or petitions for writ of mandamus for the same compensation, at least in the absence of any material change in circumstances.

## A.     "May," "Must," and "Shall"

To determine whether the Legislature intended a statutory provision to be mandatory, "we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001) (quoting *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999); *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956)). I would hold that the plain language of the Tim Cole Act's procedural provisions, by their terms and considered in light of the Act as a whole, demonstrates the Legislature's intent that a claimant must satisfy each of the Act's step-by-step mandates before he may proceed to the next step in the process, and the claimant must complete all of the steps before he may seek mandamus relief from the Comptroller's decision to deny eligibility.

### 1.     Plain Language

As described above, the Tim Cole Act's prescribed administrative process applies different directives—"may," "must," or "shall"—for different procedural steps:

- The claimant "must" file an application accompanied by specified documentation within three years of an eligible pardon, order, or relief.[5]

- The Comptroller "shall" determine eligibility and the amount owed by considering only the specified documentation and "must" do so within forty-five days after receiving the application.[6]

- If the Comptroller grants the claim, she "shall" make the payment within thirty days, to the extent funds are available and appropriated.[7]

- If the Comptroller denies the claim,

   - she "must" state the reason for the denial, and

   - the claimant "must" submit an application to cure within ten days (thirty days under the current version of the Act).[8]

- If the claimant submits an application to cure, the Comptroller "shall" again determine eligibility and the amounts owed within forty-five days.[9]

- If the Comptroller denies the claim after an application to cure, the claimant "may" then bring an action for mandamus relief.[10]

The Legislature has expressly defined each of these directives: with limited exceptions, when a statute uses the term "must," it "creates or recognizes a condition precedent," TEX. GOV'T CODE § 311.016(3); when a statute uses the term "shall," it "imposes a duty," *id.* § 311.016(2); and when

---

[5] TEX. CIV. PRAC. & REM. CODE § 103.003.

[6] *Id.* § 103.051(b–1), (c).

[7] *Id.* § 103.151.

[8] *Id.* § 103.051(d); *see* Act of June 15, 2001 77th Leg., R.S. ch. 1488, § 1, 2001 TEX. GEN. LAWS 5280, 5283 (enacting TEX. CIV. PRAC. & REM. CODE § 103.051(d); Act of May 18, 2011 82nd Leg., R.S., ch. 698, § 5, 2011 TEX. GEN. LAWS 1663, 1665 (amending TEX. CIV. PRAC. & REM. CODE § 103.051(d)).

[9] TEX. CIV. PRAC. & REM. CODE § 103.051(d).

[10] *Id.* § 103.051(e).

19

a statute uses the term "may," it "creates discretionary authority or grants permission or a power," *id.* § 311.016(1). These definitions apply to all statutes, "unless the context in which the word or phrase appears necessarily requires a different construction" or "a different construction is expressly provided by statute." TEX. GOV'T CODE § 311.016. The Tim Cole Act does not provide an alternative meaning for these terms, and as discussed below, nothing in the Act contextually compels a contrary construction. In fact, giving the words "may," "must," and "shall" in the Act's procedural provisions their plain meaning, as specified by the Legislature in the Code of Construction, results in an orderly administrative process for claimants to receive compensation without undue burden or delay for the claimants or the Comptroller. *See* TEX. CIV. PRAC. & REM. CODE § 103.051.

Thus, I construe the statutorily-required process in the following manner:

- Blair had to file an application for compensation, accompanied by the documents listed in the statute, within three years of eligibility, as a <u>condition precedent</u> to compensation under the Act.[11]

- If Blair satisfied this prerequisite, then the Comptroller had a <u>duty</u> to determine Blair's eligibility and the amount owed, by considering only the documents listed in the statute; and she had a <u>duty</u> to deny the claim if the documents did not clearly indicate on their face that Blair was entitled to compensation.[12]

- The Comptroller's determination, within forty-five days, that Blair was not eligible and her statement of the reasons that he was not eligible were <u>conditions precedent</u> to Blair's obligation to file an application to cure within ten days.[13]

- After the Comptroller satisfied these conditions, Blair's filing of an application to cure within ten days was a <u>condition precedent</u> to any further duty or obligation by

---

[11] TEX. CIV. PRAC. & REM. CODE § 103.003, 103.051(a); TEX.GOV'T CODE § 311.016(3).

[12] TEX. CIV. PRAC. & REM. CODE § 103.051(b), (b-1); TEX. GOV'T CODE § 311.016(2).

[13] TEX. CIV. PRAC. & REM. CODE § 103.051(c), (d); TEX.GOV'T CODE § 311.016(3).

20

the Comptroller.[14]

- If Blair timely submitted an application to cure, the Comptroller had a <u>duty</u> to re-determine eligibility for compensation within forty-five days.[15]

- Blair had <u>permission</u> to bring an action for mandamus relief if the Comptroller denied his claim after he submitted an application to cure.[16]

## 2. The Nature of the Act and the Consequences of Construction

This construction of the Act's procedural requirements is consistent not only with the plain meaning of the words used, but also the Act as a whole, its nature and object, and the consequences that follow from the construction. *See Wilkins*, 47 S.W.3d at 494 (identifying considerations for construction). It obligates the Comptroller to act with relative expediency but, at each step in the process, conditions the Comptroller's duty on the claimant's previous filing of documents that will assist the Comptroller in performing that duty. *See* TEX. CIV. PRAC. & REM. CODE § 103.051. The claimant is not the only participant subject to procedural prerequisites—the Comptroller's timely performance of her duty to determine eligibility and state the reasons for her denial of a claim is a condition precedent to the claimant's obligation to file an application to cure within ten days after the denial. *See id.* § 103.051(c), (d). As the claimant's application and supporting documentation assist the Comptroller in evaluating his eligibility, the Comptroller's statement of reasons for her denial of the claim assist the claimant in his efforts to cure the cause of the Comptroller's denial.

---

[14] *See* Act of June 15, 2001 77th Leg., R.S., ch. 1488, § 1, 2001 TEX. GEN. LAWS 5280, 5283 (enacting TEX. CIV. PRAC. & REM. CODE § 103.051(d).

[15] *See* Act of June 15, 2001 77th Leg., R.S., ch. 1488, § 1, 2001 TEX. GEN. LAWS 5280, 5283 (enacting TEX. CIV. PRAC. & REM. CODE § 103.051(d)); TEX. CIV. PRAC. & REM. CODE § 103.051(d); TEX. GOV'T. CODE § 311.016(2).

[16] TEX. CIV. PRAC. & REM. CODE § 103.051(e); TEX. GOV'T. CODE § 311.016(1).

But once the Comptroller has satisfied her duty by providing the claimant with the reasons for her denial, the onus shifts back to the claimant to comply with his duty to timely file an application to cure. *See id.* § 103.051(d). The Act's process for an application to cure and re-determination of eligibility give both the claimant and the Comptroller one opportunity to correct any errors. A claimant's failure to satisfy his part of this process—a timely application to cure—precludes him from proceeding to the next step in his quest for compensation; and the Comptroller's failure to fulfill her part of this process—re-determination of eligibility—subjects her to this Court's mandamus authority. *See id.* § 103.051(a), (d), (e); *In re Allen*, 366 S.W.3d at 701; *In re Smith*, 333 S.W.3d at 585.

The procedure for judicial review of the Comptroller's decision is likewise consistent with the Act as a whole. The Act provides that the Comptroller's "duty to determine the eligibility of a claimant" is "purely ministerial," *id.* § 103.051(b–1), and thus a claimant could, under general law, seek a writ of mandamus to compel the Comptroller to make a determination of eligibility if the Comptroller failed to do so within the time provided by the statute. *See, e.g.*, *In re Smith*, 333 S.W.3d at 585 ("The Court's mandamus authority extends 'to order or compel the performance of a judicial, ministerial or discretionary act or duty that, by state law, the officer or officers are authorized to perform.'") (citing TEX. GOV'T CODE § 22.002(c) and TEX. CONST. art. V, § 3). But the Legislature has also afforded claimants under the Act a specific avenue for judicial review of the Comptroller's decision to deny a claim, if the claimant filed an application to cure and complied with the other required steps. *See* TEX. CIV. PRAC. & REM CODE § 103.051(e).

To allow Blair to seek mandamus review of the Comptroller's substantive decision without

22

first filing an application to cure and invoking the Comptroller's duty to re-determine his eligibility would render the statute's re-determination process optional for claimants (though not for the Comptroller), contrary to the statute's mandatory language with respect to both the Comptroller's actions and the claimant's actions. *See id.* § 103.051(a)–(d). And if substantive review of the correctness of the Comptroller's eligibility determination is available at any stage of the compensation process, the language in subsection (e) that grants permission for a mandamus action "[i]f the comptroller denies a claim after the claimant submits an application [to cure]" is superfluous. TEX. CIV. PRAC. & REM CODE § 103.051(e); *see also Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous.").

Moreover, the Legislature's creation of a right to review under expressly defined circumstances evidences a legislative expectation that the same right to review is not available when those circumstances are not present. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) ("When the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the Legislature intended," and "we must honor that difference."); *cf.* TEX. GOV'T CODE § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. . . . Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

23

### 3. Other Cases Construing Statutory Use of "Must"

This construction of the Act's procedural requirements is also consistent with this Court's precedent in analogous situations. *See, e.g.*, *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 72 (Tex. 2011) (holding that health care liability claimants' failure to include authorization form with notice precluded claimants from availing themselves of statutory tolling provision because statute provided that "notice *must* be accompanied by the authorization form") (quoting TEX. CIV. PRAC. & REM CODE § 74.251(a)) (emphasis added)); *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 404–05 (Tex. 2009) (holding that provision in Edwards Aquifer Authority Act that "declaration of historical use *must* be filed [on or before March 1, 1994]" prohibited late-filed applications) (emphasis added); *see also Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 492 (Tex. 2001) (holding that use of "must" in Texas Seed Arbitration Act meant that "the purchaser *must submit* the claim to arbitration as provided by this chapter *as a prerequisite* to the exercise of the purchaser's right to maintain a legal action against the labeler").

> In *Edwards Aquifer*, we observed:
>
> We have said that "[t]he word 'must' is given a mandatory meaning when followed by a noncompliance penalty" but this does not suggest that when no penalty is prescribed, "must" is non-mandatory. "When the statute is silent [regarding the penalty for noncompliance], we have looked to its purpose for guidance." The EAAA does not suggest that an applicant can be fined for a late filing or that the water allocated should be reduced accordingly. The only penalty the EAAA suggests is that late applications will not be considered.

291 S.W.3d at 404 (citation omitted); *see also Wilkins*, 47 S.W.3d 486, 494 ("When a statute is silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences.").

Here too, the only penalty suggested by the Tim Cole Act for a claimant's failure to take a mandatory step in the application process is that he has not invoked the Comptroller's duty to take responsive action and, in the case of a failure to file an application to cure under subsection (d), he may not avail himself of subsection (e)'s avenue for substantive review of the Comptroller's re-determination of eligibility—a determination that the Comptroller has no duty to make absent an application to cure.

This case is readily distinguishable from those instances when a statute's context dictated that we not construe the term "must" to create a condition precedent. *See, e.g.*, *Wilkins*, 47 S.W.3d at 492 (although Texas Seed Arbitration Act made arbitration a condition precedent to filing suit, the context of the statute demonstrated that failure to file arbitration "within the time necessary to permit effective inspection of the plants under field conditions" did not bar suit) (applying TEX. AGRIC. CODE §§ 64.002, 64.006(a)); *City of DeSoto v. White*, 288 S.W.3d 389, 395–96 (Tex. 2009) (holding that police chief's suspension letter omitting statutorily required information about process for appeal of suspension did not deprive hearing examiner of jurisdiction over suspended officer's appeal and require reinstatement of officer); *see also* TEX. GOV'T CODE § 311.016 (providing exception to general construction of term "must" when "the context in which the word or phrase appears necessarily requires a different construction.").

This is not a statutory scheme that expressly provides an alternative penalty for failure to fulfill its procedural requirements, nor does the Act indicate an expectation that claimants who fail to fulfill the procedural requirements will be permitted to proceed to compensation anyway. *Cf. Wilkins*, 47 S.W.3d at 495–96 (observing that statutory provision for jury consideration of

25

arbitrator's findings regarding delay in bringing arbitration indicated that Legislature did not intend delay to bar suit). The statutory procedures for compensation under the Tim Cole Act are not mere notice requirements—each step in the process serves as a foundation for the next step in the process, and one party's fulfillment of a statutory duty at each step of the process gives rise to either a complimentary duty or a right under the statute. *See* TEX. CIV. PRAC. & REM CODE § 103.051; *cf. White*, 288 S.W.3d at 395–96 (addressing failure to include statutorily-mandated notice of limited right of review from hearing in otherwise timely and compliant suspension letter). The effect of enforcing the Act's mandatory procedures as written does not deprive non-compliant claimants of rights they had at common law or that exist outside of the Act; rather, the only effect of failing to fulfill the Act's statutory prerequisites is that the claimant may not receive the benefits otherwise available under the Act. *Cf. Wilkins*, 47 S.W.3d at 492–96 (declining to construe failure to comply with promptness requirement to bar suit on common law cause of action). And because the right to compensation Blair seeks is created by the Act and did not exist at common law, the Open Courts provision of the Texas Constitution is not implicated. *See* TEX. CONST. art. I, § 13; *see also Sax v. Votteler*, 648 S.W.2d 661, 665–66 (Tex. 1983) (holding that "the right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress").

### 4. Application

Blair failed to comply with the procedural conditions precedent necessary to authorize this Court to grant him the relief he seeks in this action for mandamus. After the Comptroller denied his

26

first application, he filed a "Motion for Reconsideration of Denial" within ten days, and then filed another "Motion to Reconsider" twenty-three days later. We need not, and I would not, hold that the Act required Blair to title his tenth-day filing an "Application to Cure" rather than a "Motion for Reconsideration of Denial," but future claimants should follow that practice to avoid confusion. In any event, the Act did not permit Blair to file the subsequent "Motion to Reconsider," and the Comptroller should not have considered it. Nor should the Comptroller have invited, accepted, considered, or ruled on Blair's subsequent "Supplemental Motion to Cure," as the Act does not authorize any action following the denial of an application to cure other than a petition for writ of mandamus. Once Blair's deadline to file an application to cure passed, his ability to submit information to the Comptroller ceased, and his only remaining avenue was to seek mandamus relief as the Act allows. Instead, he continued to submit additional documents to the Comptroller, and then relied on the information in those documents to support his first mandamus petition. Blair failed to comply with the Act's procedural requirements in his first application for compensation, and we denied his first petition for mandamus.

Then, contending that he was entitled to file a second application for the same relief (a contention I discuss further below), Blair submitted a successive application and, upon the Comptroller's denial, immediately sought mandamus relief without first filing an application to cure, as the statute says he "must" do. Since this is the denial for which he now seeks mandamus, his failure to submit an application to cure following the Comptroller's denial of his second application is, by itself, a reason we must deny his petition.

Justice Hecht disagrees that the Act required Blair to file an application to cure before seeking mandamus relief a second time; the statute does not require an application to cure, according to Justice Hecht, when the application for compensation is denied on a "legal basis." But the statute makes no such distinction between grounds for denial. It states only that "[i]f the comptroller denies the claim, the comptroller must state the reason for the denial," and within thirty days after the denial is received, "the claimant must submit an application to cure any problem identified." TEX. CIV. PRAC. & REM CODE § 103.051(d). More importantly, the statute specifically permits mandamus only "[i]f the comptroller denies a claim *after the claimant submits an application under Subsection (d)*"—i.e., an application to cure. *Id.* § 103.051(e). These procedural "musts" create "conditions precedent," *see* TEX. GOV'T CODE § 311.016(3), and we (and Blair) are bound by them.

There is nothing unreasonable or even undesirable about giving the claimant and the Comptroller a second chance to achieve the right result—within the statutorily provided timeframe—even when the Comptroller denies the claim for legal reasons rather than a defect in the paperwork. Other statutes contain similar time-sensitive but mandatory second chances. The Administrative Procedure Act (APA), for example, requires a motion for rehearing as a prerequisite to appeal from most contested cases. *See* TEX. GOV'T CODE § 2001.145(a) ("A timely motion for rehearing is a prerequisite to an appeal in a contested case except . . . ."). Like an application to cure under the Tim Cole Act, a motion for rehearing under the APA must be filed with a certain number of days after the agency's decision, and like the Comptroller's re-determination of eligibility under the Tim Cole Act, the agency has a certain number of days to act on the motion. *See id.* § 2001.146(a), (c) (twenty days to file motion for rehearing, forty-five days to act on the motion). While I agree with Justice

28

Hecht that an application to cure is not the same as a "motion for reconsideration," and likewise neither of these is the same as a "motion for rehearing," all of these filings have the same general purpose—an opportunity to correct a potentially erroneous decision—and none of them are inherently limited to the correction of only one specific kind of error. *See Tex. Water Comm'n v. Dellana*, 849 S.W.2d 808, 810 (Tex. 1993) (observing that motion for rehearing under APA predecessor statute is designed to "allow the agency opportunity to correct the error or to prepare to defend it") (quoting *Suburban Util. Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 365 (Tex. 1983)).

## B.    Successive Applications

Blair's petition and the Comptroller's response also raise the question of when, if ever, a claimant may file successive applications or successive mandamus petitions after the Comptroller has denied an earlier application and we have denied an earlier petition for mandamus relief. I would hold that, although res judicata does not bar successive applications and petitions, the Act does not permit them, at least in the absence of materially changed circumstances.

### 1.    Res Judicata

The Comptroller contends that res judicata bars Blair's second application because the Comptroller's determination of Blair's first application is a final agency decision. Blair responds that the "final agency decision rule" applies only when an agency is acting in a judicial capacity following a contested testimonial hearing, and it does not apply when, as here, the comptroller's duty is "purely ministerial." Blair also contends that this Court's denial of his first petition for writ of mandamus was not a decision on the merits and thus has no res judicata effect.

I agree that neither the Comptroller's prior determination of eligibility nor this Court's previous denial of mandamus relief bars Blair's second application under the principles of res judicata. The process for obtaining compensation under the Tim Cole Act is unique to that Act. It is administered by the Comptroller and does not lead to a "contested case" proceeding under the APA. *Cf.* TEX. GOV'T CODE § 2001.003(1) (defining a "contested case" as "a proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency *after an opportunity for adjudicative hearing*") (emphasis added). The Comptroller's determination of eligibility is ministerial and must be based solely on the verified documents filed with the application; it is not the result of an adjuratory process in which the Comptroller acts in a judicial or quasi-judicial capacity. *See* TEX. CIV. PRAC. & REM CODE § 103.051. Thus, the Comptroller's determination of eligibility, even when final, does not have res judicata effect. *Cf. Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 87 (Tex. 2008) (res judicata generally applies to TWC final orders because TWC acts in judicial capacity in deciding wage claims and parties had "an adequate opportunity to litigate their claims through an adversarial process in which TWC finally decided disputed issues of fact"); *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n of Tex.*, 798 S.W.2d 560, 561 (Tex. 1990) (PUC hearing and final order on rate increase precluded re-litigation of same issue in subsequent PUC proceeding); *see also United States v. Utah Constr. & Min. Co.*, 384 U.S. 394, 422 (1966) (administrative proceeding can have preclusive effect when the administrative agency "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate").

30

Nor does this Court's denial of Blair's previous petition for writ of mandamus have res judicata effect. The doctrine of res judicata is implicated only by "a prior final determination on the merits." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (listing elements of res judicata). Our denial of Blair's first petition for writ of mandamus was not a determination on the merits. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 119 (Tex. 2004) ("[T]his Court's failure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available.").

## 2.    Statutory Language

Although res judicata does not bar Blair's subsequent application for compensation, we must still determine whether the Act itself permits successive applications. Blair contends that the Act places no limit on the number of applications he may file seeking the same compensation, as long as he files them within the statute's three-year limitation period. The Comptroller argues that the Act prohibits successive applications, at least in the absence of an intervening material change in circumstances, because holding otherwise "could lead to the futile filing of seriatim applications of the same denied claim despite no changed circumstances during the Act's three-year limitations period, forcing the Comptroller to re-deny the same claim over and over again." *See Young Trucking, Inc. v. R.R. Comm'n*, 781 S.W.2d 719, 721 (Tex. App.—Austin 1989, no writ) (holding that, once an order becomes administratively final, an agency does not have inherent authority to reopen the proceeding and can reconsider its order only if provided for by statute or on a showing of changed circumstances). Justice Hecht agrees with Blair; I agree with the Comptroller.

The Act sets forth a series of specific procedural requirements that, together, provide a simple

and efficient process for those who were wrongfully imprisoned to obtain the compensation to which they are entitled. But the process includes requirements, and these requirements are mandatory. Justice Hecht's construction of the Act as permitting multiple applications by the same claimant based on the same wrongful imprisonment renders these mandatory requirements meaningless. For example, a claimant who failed to file an application to cure within ten days (now thirty days) of the Comptroller's initial denial could negate the statutory deadline by simply starting the process over.

This Court recently prohibited this kind of circumvention of procedural deadlines in an analogous circumstance. *See City of Houston v. Estate of Jones*, 388 S.W.3d 663 (Tex. 2012). In *City of Houston*, we held that a court of appeals may not hear an interlocutory appeal from the denial of a governmental unit's plea to the jurisdiction if the plea merely re-urges the same grounds argued in a prior plea to the jurisdiction. *Id.* at 666–67 (construing TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8)). We noted that "[p]ermitting appeals under circumstances such as these would effectively eliminate the requirement that appeals from interlocutory orders must be filed within twenty days after the challenged order is signed" because the governmental unit could just re-file the plea to the jurisdiction after twenty days had expired. *See id.* We concluded that because the city's second plea to the jurisdiction "did not assert a new ground, [it] was substantively a motion to reconsider," for which the statute did not authorize interlocutory appeal. *Id.*

Here too, permitting Blair to file a second application or pursue mandamus relief from the Comptroller's denial of his second application for the same compensation, at least absent a material change in circumstances, "effectively eliminates" the Act's procedural deadlines. *See id.* As in *City of Houston*, Blair's second application for the same compensation was just another untimely request

for reconsideration of his original application. *See id.* Justice Hecht notes that the Act does not expressly prohibit Blair from filing duplicative applications. But the Act's detailed procedural provisions necessarily prohibit conduct that conflicts with its mandates or renders them entirely ineffective, like allowing redundant re-filing of applications renders the statutes procedural deadlines meaningless.

The conduct at issue here—seeking compensation under the Act—is not something Blair has a right to do independent of the Act. Unlike statutes that place limits on existing rights, there is no reason for a statute that creates a right under limited circumstances—e.g., the right to compensation if the Act's procedures are satisfied—to identify all other circumstances in which the right does not exist. The Comptroller has no power to grant compensation to claimants like Blair except that power granted by the Act. *Cf. Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex. 2005) (observing "well-established principle" that administrative agencies "may exercise only those powers that the Legislature confers upon [them] in clear and express language, and cannot erect and exercise what really amounts to new or additional power for the purpose of administrative expediency."); *see also TGS-NOPEC Geophysical*, 340 S.W.3d at 438 (identifying the Comptroller as an administrative agency).

For all of these reasons, I would hold that the Act does not permit multiple applications and petitions by the same claimant based on the same claim under the same facts.

### 3. Material Change in Circumstances

Blair next argues that successive applications should at least be permitted if there was a material change in circumstances after the denial of a prior application, which he contends is the case

33

here. The Comptroller disagrees that there has been a material change in circumstances. I agree with the Comptroller, and therefore I need not decide whether a material change in circumstances could ever justify a successive application.

Attempting to show a material change of circumstances, Blair first argues that our decision in *In re Smith* created a change in law that justifies his new application. Specifically, Blair notes that our holding in *In re Smith* was contrary to the Comptroller's conclusion, in response to Blair's first application, that Blair could not be eligible for the period from 1993–2002, when he was serving concurrent sentences for the 1988 convictions. But the Comptroller did not ultimately deny Blair's application on that ground. Although she relied on that ground in her first determination, she did not do so in her second or her third. Thus, our decision in *In re Smith* was not material to the Comptroller's denial of Blair's first application for compensation, and could not constitute a change in the law to justify a successive application.

Next, Blair contends that the Legislature's 2009 amendments to the Act also constitute a change in the law that justifies his second application. Among other things, the 2009 amendments increased the lump-sum compensation available to claimants under the Act and added a new provision for annuity payments. *See* Acts of May 11, 2009, 81st Leg., R.S., ch. 180, § 2, 2009 TEX. GEN. LAWS 523, 526. The Legislature expressly provided that the increased lump-sum payment "applies only to an application for compensation . . . filed on or after the effective date of this Act," *id.* § 14(a), but the annuity payments were available to "a person who received compensation under [the Act] before September 1, 2009 . . . based on a present value sum equal to the amount the person would receive . . . if the person were to receive compensation . . . on September 1, 2009," *id.* § 14(b).

34

Blair argues that these amendments demonstrate the Legislature's intent to allow successive applications. I disagree. To the contrary, the 2009 amendments demonstrate that the Legislature knows how to allow a redetermination of a previously decided claim for compensation when it chooses to do so. Had the Legislature intended to authorize successive applications by claimants who previously received compensation, rather than only allowing an adjustment to the annuity payment rights of claimants previously determined to be eligible, it could have, and would have, done so. Because it did not, I would hold that the 2009 amendments do not constitute a material change in circumstances that would permit Blair to file a second application.

## VI.
## Conclusion

I agree with Blair that the Tim Cole Act does not provide for "termination" of his right to compensation based on felony convictions that occurred before he became eligible for compensation, and the fact that he remains in prison for those conviction does not preclude him from eligibility under the plain language of the Act. But I agree with the Comptroller that the Act does not permit Blair to eschew the Act's procedural requirements or file a successive application seeking the same compensation, at least in the absence of any material change in circumstances.

Blair invites the Court to ignore the Act's procedural requirements, as a matter of policy and "in the interest of justice," so that he can receive the compensation to which he contends he is otherwise entitled. But the Legislature has imposed those procedural requirements, and "policy arguments cannot prevail over the words of the statute," *In re Allen*, 366 S.W.3d at 708 (citing *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003)).

35

[T]he question before us is not one of policy but of statutory construction, and our duty is to give effect to the Legislature's intent. While the limitations in Chapter 103 may sometimes be harsh, the common-law rule was harsher still, entitling claimants to nothing from a state that wrongfully imprisoned them. As Chapter 103 is intended to ameliorate that rule, it is the Legislature's prerogative to set its boundaries.

*Oakley*, 227 S.W.3d at 62.

In the Tim Cole Act, the Legislature has set forth a simple and efficient, but mandatory, process for those who were wrongfully imprisoned to obtain compensation. The Act requires claimants to follow the steps in this process by specific deadlines, and imposes a ministerial duty on the Comptroller to determine the claimant's eligibility if, but only if, the claimant meets those requirements. Because Blair failed to comply with those requirements, he is not eligible to receive compensation. The Act did not permit Blair to file a second application and, even if it did, he failed to file an application to cure within ten days of the Comptroller's denial of that application—a prerequisite to mandamus review. I therefore concur in the Court's decision to deny Blair's petition for writ of mandamus.

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** August 23, 2013

36