**In re Billy James SMITH, Relator.**

**No. 10–0048.**

Supreme Court of Texas.

Argued Nov. 10, 2010.

Decided March 4, 2011.

Kristopher Edwin Moore, Kevin Glasheen, Glasheen, Valles, Inderman & DeHoyos, LLP, Odessa, for Billy James Smith.

Martin Cherry, General Counsel, Philip A. Lionberger, Office of Attorney General, Asst. Solicitor General, Greg W. Abbott, Attorney General, Clarence Andrew Weber, Kelly Hart & Hallman LLP, David S. Morales, Office of Attorney General, Deputy First Asst. Attorney General, Austin, James C. Ho, Gibson Dunn & Crutcher LLP, Dallas, for Susan Combs.

Justice MEDINA delivered the opinion of the Court.

Under the Texas Wrongful Imprisonment Act, which is now known as the Tim Cole [1] Act, a wrongfully-imprisoned person

---

**1.** Tim Cole died of an asthma attack in 1999 while serving a 25–year sentence for aggravated sexual assault. DNA evidence later

may seek compensation from the state for the period of wrongful imprisonment. TEX. CIV. PRAC. & REM.CODE § 103.001(a). Application is made to the Texas Comptroller of Public Accounts, who is authorized to determine eligibility and the amount owed to the claimant. *Id.* § 103.051(b). The amount owed is determined by multiplying a fixed amount, currently set at $80,000 per year, by the period of wrongful imprisonment. *Id.* § 103.052(a)(1). In calculating the wrongful-imprisonment period, the Act excludes any period for which the claimant was serving a concurrent sentence. *Id.* § 103.001(b).

Relator, who was on parole at the time of his wrongful conviction, complains that he is entitled to additional compensation because the Comptroller erroneously applied the concurrent-sentence restriction to reduce his award. Relator submits that he would not have been imprisoned but for the wrongful conviction and that the resulting revocation of his parole should not be used to reduce his award. The Comptroller concluded that the concurrent-sentence restriction applied and reduced the claimant's compensation accordingly. We do not agree that the concurrent-sentence restriction applies under these circumstances and conditionally grant the relator's petition for mandamus relief.

## I

In December 1970, Billy James Smith was convicted of robbery and sentenced to 25 years in prison. He was released on parole in 1983. In 1986, Smith was convicted of aggravated sexual assault and sentenced to life imprisonment. His parole on the 1970 robbery conviction was also revoked. On June 11, 1987, his sentence on the robbery conviction was discharged, but he remained in prison under the life sentence for sexual assault.

In 2006, Smith applied for a state writ of habeas corpus. See TEX.CODE CRIM. PROC. art. 11.07 (establishing procedure for habeas corpus relief in non-death-penalty cases). He alleged that DNA testing and other evidence proved his actual innocence. *See id.* arts. 64.01–.05 (explaining procedure for obtaining forensic DNA testing). The application was filed in the convicting criminal district court, but made returnable to the Court of Criminal Appeals because it involved a final conviction in a felony case. *Id.* art. 11.07, § 3.

The trial court found that DNA testing exonerated Smith, and released him from custody on July 7, 2006. *See id.* art. 11.65(b) (providing that convicting court may order the release of the applicant on bond). The convicting court's findings were transmitted to the Court of Criminal Appeals, which subsequently agreed in an unpublished per curiam opinion that Smith had "established by clear and convincing evidence that no reasonable juror would have convicted him in light of the DNA results." *Ex Parte Smith,* 2006 WL 3691244, *1 (Tex.Crim.App., Dec. 13, 2006); *see also* TEX.CODE CRIM. PROC. art. 11.07, §§ 3, 5. The Court of Criminal Appeals accordingly granted Smith's application on the basis of his actual innocence.

A little less than three years later, Smith applied for compensation under the Tim Cole Act, seeking approximately $1,593,000. *See* TEX. CIV. PRAC. & REM.CODE § 103.003 (requiring application to be filed within three years of pardon or relief granted on the basis of innocence). The Comptroller approved Smith's application,

---

cleared him of the crime, and in 2010 Governor Rick Perry granted him the state's first posthumous pardon. *See* Op. Tex. Att'y Gen. No. GA–0754, at 3 (2010) (recognizing Governor's authority to grant posthumous pardon); *see also* Act of May 27, 2009, 81st Leg., R.S., ch. 180, § 1, 2009 Tex. Gen. Laws 523 (naming the Act after Tim Cole).

but determined he was owed a lesser amount, approximately $1,527,000, after applying the concurrent-sentence restriction. *See id.* § 103.001(b). Smith accepted the reduced award under protest, asked the Comptroller to reconsider her determination, and when she denied his request, filed this original proceeding.

## II

The Comptroller's decision is not appealable, but a claimant may seek review through an original mandamus proceeding. *Id.* § 103.051(e). The original proceeding must be filed in this Court because only the Supreme Court may issue a writ of mandamus against an officer of the executive department of this state, such as the Comptroller. *A & T Consultants, Inc. v. Sharp,* 904 S.W.2d 668, 672 (Tex.1995) (orig. proceeding). The Court's mandamus authority extends "to order or compel the performance of a judicial, ministerial or discretionary act or duty that, by state law, the officer or officers are authorized to perform." TEX. GOV'T CODE § 22.002(c); *see also* TEX. CONST. art. V, § 3.

■ Although mandamus will not issue to control an officer's legitimate exercise of discretion, it may issue to enforce the performance of a nondiscretionary or ministerial act. *Cobra Oil & Gas Corp. v. Sadler,* 447 S.W.2d 887, 896 (Tex.1969) (orig. proceeding). In this regard, a public officer has no discretion or authority to misinterpret the law. *See, e.g., Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593, 602 (Tex.1975) (original proceeding to compel the comptroller to issue a warrant for payment of architects' services); *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138, 141 (1962) (original proceeding to compel secretary of state to file a corporate charter); *Tarrant Cnty. Water Control & Improvement Dist. No. 1 v. Pollard,* 118 Tex. 138, 12 S.W.2d 137, 139 (1929) (original proceeding to compel attorney general to approve bonds and certify them to comptroller for registration). Similarly, when an alleged mistake of law involves an issue of statutory construction, our review is de novo. *First Am. Title Ins. Co. v. Combs,* 258 S.W.3d 627, 631 (Tex.2008).

## III

Wrongfully-imprisoned persons have not always been entitled to compensation from the state. The common law provided no recourse for the innocent. *State v. Oakley,* 227 S.W.3d 58, 62 (Tex.2007). It was not until 1965 that the Legislature enacted the first wrongful-imprisonment statute. Act of May 28, 1965, 59th Leg., R.S., ch. 507, 1965 Tex. Gen. Laws 1022, 1022–24; *see also* TEX. CONST. art. III, § 51–c (constitutional amendment authorizing compensation legislation). Since then, the statute has undergone several revisions and is now found in Chapter 103 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154.

Chapter 103, also known as the Tim Cole Act, presently grants compensation to persons who fulfill two requirements. Act of May 27, 2009, 81st Leg., R. S., ch. 180, § 1, 2009 Tex. Gen. Laws 523. First, the person must have "served in whole or in part a sentence in prison under the laws of this state." TEX. CIV. PRAC. & REM.CODE § 103.001(a)(1). Second, the person must have received either "a full pardon on the basis of innocence for the crime for which the person was sentenced," or "been granted relief on the basis of actual innocence of the crime for which the person was sentenced." *Id.* § 103.001(a)(2)(A)–(B). Smith met these requirements.

Additionally, Smith was required to follow certain statutory procedures to obtain compensation. He was required to file an application for compensation with the Comptroller's office, which he did. *See id.* § 103.051(a). The Comptroller, in turn, was under a legal duty to process Smith's

claim, verify his eligibility for compensation, and determine the amount of compensation, if any, that he was owed. *Id.* § 103.051(b)(1)–(2), (c). The Comptroller complied.

In determining Smith's eligibility and the amount of compensation owed him, the Comptroller was also required to determine whether any statutory restrictions applied to Smith's claim. There are a number of restrictions that may apply depending on the facts, but pertinent here is the concurrent-sentence restriction. *Id.* § 103.001(b). Under this restriction, a person may have his claim reduced, or entirely extinguished, if he was under a concurrent sentence for another crime to which the Act does not apply while he was serving all or part of a sentence for which the Act does apply. *Id.* In other words, a person is entitled to compensation for imprisonment for a crime he did not commit unless he was also serving a concurrent sentence for a crime he did commit.

When Smith was wrongfully convicted and incarcerated for the 1986 aggravated sexual assault, he was on parole for his 1970 robbery conviction. The sexual assault conviction revoked that parole. From August 7, 1986, when Smith's wrongful sentence began, to June 11, 1987, when his concurrent sentence on the 1970 robbery conviction discharged, Smith was serving concurrent sentences. Smith's sentence on the wrongful sexual assault conviction ended on July 7, 2006.

Applying the concurrent-sentence restriction, the Comptroller determined that Smith was eligible for wrongful-imprisonment compensation from June 12, 1987, to July 7, 2006, a total 19 years and 25 days. Smith contends that he is entitled to an additional sum for the time he was incarcerated following the revocation of his parole for the robbery conviction to the date of its discharge. The question before us is whether a parolee, whose parole is revoked because of a wrongful conviction, is entitled to compensation under the Act for the period of imprisonment the parolee would have otherwise served out of prison on parole. The question is one of statutory construction.

## IV

When construing a statute, we begin with its language. "[W]e consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex.2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999)). But when statutory language is susceptible to more than one reasonable interpretation, we look beyond its language for clues to the Legislature's intended meaning. *See Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867–68 (Tex.2009) (referencing TEX. GOV'T CODE § 311.023). The disagreement here is over the meaning of the concurrent-sentence restriction, which provides:

> (b) A person is not entitled to compensation under Subsection (a) for any part of a sentence in prison during which the person was also serving a concurrent sentence for another crime to which Subsection (a) does not apply.

TEX. CIV. PRAC. & REM.CODE § 103.001(b).

Smith submits that the phrase "in prison" is an indirect prepositional phrase modifying the object "sentence" wherever it appears in section 103.001(b). This grammatical construction comports with the Legislature's intent to compensate individuals for the time spent wrongfully incarcerated, while denying compensation only for the time such individuals would otherwise have spent in prison. Smith argues then that the restriction applies when a person is serving a "concurrent

sentence" in prison, but not when the person has been released on parole. He submits that his parole would not have been revoked, and he would not have been incarcerated, but for the wrongful conviction. Under these circumstances, his imprisonment was wrongful not only because of the conviction but also because of the wrongful conviction's effect in revoking his parole.

The Comptroller responds that Smith's status as a parolee at the time of his wrongful conviction is immaterial because the concurrent-sentence restriction makes no exception for parolees. The statute only requires a concurrent sentence, and it is undisputed that Smith was already under a criminal sentence for robbery when he was wrongfully convicted of sexual assault, even though he was not in prison. Because the statute draws no distinction between a concurrent sentence in prison and a concurrent sentence on parole, the Comptroller concludes that the concurrent-sentence restriction must apply to limit the compensation owed to Smith.

 The Comptroller further argues that even if Smith's alternative construction is reasonable, it remains merely an alternate construction of a statute that waives sovereign immunity. Because the statute waives sovereign immunity, the Comptroller submits that two special rules of statutory construction apply that favor her construction. First, a statutory waiver of sovereign immunity must be construed narrowly. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008). Second, statutory language waiving sovereign immunity must be clear and unambiguous. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 697 (Tex.2003); *see also* TEX. GOV'T CODE § 311.034 (codifying the clear and unambiguous standard). The Comptroller concludes that her construction must prevail because it is obviously narrower than Smith's and because the waiver Smith proposes is not expressed in clear and unambiguous statutory language.

The Act previously gave a claimant an option of seeking wrongful-imprisonment compensation by either an administrative proceeding through the Comptroller or a civil lawsuit against the state. Act of June 15, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280 (formerly TEX. CIV. PRAC. & REM.CODE § 103.002 (repealed)). Regarding the civil-litigation option, the Act expressly waived the state's immunity from suit. *Id.* at 5281 (formerly TEX. CIV. PRAC. & REM.CODE § 103.101(a) (repealed)). And in *Oakley,* we observed that special rules of statutory construction applied when construing the Act's civil-litigation option because of sovereign immunity. *Oakley,* 227 S.W.3d at 62.

But this case does not involve a civil lawsuit against the state. In fact, since our decision in *Oakley,* the Legislature has eliminated the civil-lawsuit option, retaining only an administrative procedure for wrongful-imprisonment claims. Act of May 11, 2009, 81st Leg., R.S., ch. 180, § 12, 2009 Tex. Gen. Laws 523, 526 (repealing § 103.002 and subchapter C). The current statute directs the Comptroller to determine eligibility and the amount owed according to its terms, and the proceeding here seeks to compel the Comptroller to perform her ministerial duty under the Act. As such, the proceeding does not implicate sovereign immunity or the special rules attendant thereto. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex.2009) (observing that proceeding to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity even when the effect compels the payment of money).

 Whether the Legislature intended the concurrent-sentence restriction to apply only to persons serving sentences

in prison or also to persons serving sentences on parole at the time of the wrongful conviction is a close question. The text of the statute can reasonably be read to support either interpretation; neither the Comptroller's nor Smith's reading of the statute is unreasonable or implausible. When a statute's language is nebulous and "[t]he point of disagreement lies between two plausible interpretations," we resort to additional construction aids to divine the Legislature's intent. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 355 (Tex.2009); *see also Galbraith Eng'g Consultants*, 290 S.W.3d at 867–68 (referencing TEX. GOV'T CODE § 311.023). The Code Construction Act lists a number of matters that may be considered in aid of construction, including the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE § 311.023.

A reasonable construction of a statute by the administrative agency charged with its enforcement is entitled to great weight. *Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex.2000), *cert. denied*, 530 U.S. 1244, 120 S.Ct. 2690, 147 L.Ed.2d 962 (2000). Courts may give less deference to an agency's reading of a statute, however, when legislative intent is at issue rather than the application of technical or regulatory matters within the agency's expertise. *Flores v. Employees Retirement Sys. of Tex.*, 74 S.W.3d 532, 545–46 (Tex.App.-Austin 2002, pet. denied). We may also be guided by reasoned interpretations of a statute by officials of the state executive branch, particularly the attorney general. *Koy v. Schneider*, 110 Tex. 369, 221 S.W. 880, 885–86 (1920). The opinion of the attorney general is not binding on this Court, but it is often persuasive. *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex.1996).

In this regard, Smith argues that a 2007 Texas Attorney General Opinion provided to the Comptroller supports his claim for compensation. The opinion on which Smith relies involved a wrongful-imprisonment claim arising from one of the "well-publicized ... Tulia prosecutions." Op. Tex. Att'y Gen. No. GA–0531, at 1 (2007). In those prosecutions, several individuals were arrested in Tulia by a local drug task force and convicted of selling small amounts of cocaine. Following a state investigation, those arrests and convictions were later discredited, and the Governor pardoned most of the individuals who had been convicted.

In the Tulia matter, the Comptroller requested the attorney general's opinion on whether section 103.001(b) barred a claim for compensation of an applicant who had served a concurrent sentence because his wrongful conviction caused his probation on an unrelated crime to be revoked. *See id.* The attorney general concluded that the Comptroller could "approve a claim for compensation under chapter 103 of the Civil Practice and Remedies Code where there is a concurrency between the prison sentences for the wrongful imprisonment and for an unrelated offense if the concurrent sentence was served solely because of the wrongful conviction." *Id.* at 3.

Smith submits that the only difference between himself and the Tulia defendant is that he was on parole at the time of his conviction, whereas the Tulia defendant was on probation. Both had prior convic-

tions for which they were not then serving prison time, both were free at the time of their subsequent convictions, both were wrongfully convicted, and both were exonerated on the subsequent conviction.

 The Comptroller maintains, however, that the distinction between parole and probation is significant and renders the Tulia opinion inapplicable here. According to the Comptroller, a parolee is serving a concurrent sentence within the meaning of the Act, whereas a probationer is not. Unlike probation, which, according to the Comptroller, is "an act of grace or clemency which may be granted by a trial court to a seemingly deserving defendant," BLACK'S LAW DICTIONARY 1082 (5th ed.1979), a parolee is under a criminal sentence and has neither been granted clemency nor had his sentence commuted. TEX. GOV'T CODE § 508.002. Thus, when parole is revoked, the parolee is returned to his original sentence from which he was granted parole. *Ex parte Daniel,* 781 S.W.2d 412, 414 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd). But when probation is revoked, the probationer is imprisoned for the first time, and the revocation leads to the imposition of a criminal sentence. *Id.* The Comptroller concludes then that Smith, who was on parole at the time of the subsequent wrongful conviction, was nevertheless serving a concurrent sentence, albeit outside prison, unlike the Tulia defendant, who was on probation.[2]

Smith responds that the Comptroller's interpretation unfairly penalizes wrongfully-imprisoned individuals who were leading productive lives on parole. Smith submits that the Act is remedial in nature and intended to compensate persons who should not have been incarcerated in a Texas prison. He questions why the

Comptroller should choose to treat parolees and probationers differently, since the Act does not make such distinctions. It instead focuses on the cause of the imprisonment. Because he would not have been in prison but for the wrongful conviction, Smith concludes that the Comptroller's distinction between parolees and probationers only serves to undermine the intent of the entire chapter.

We agree that the Tulia opinion did not focus on the subtle distinction the Comptroller draws here. The attorney general instead analyzed the cause of the concurrent confinement, reasoning that if the defendant would not have served the concurrent prison sentence but for the wrongful conviction, section 103.001(b) would not bar the defendant's entitlement to compensation under the Texas Wrongful Imprisonment Act:

> ... While it is true that the concurrent sentence in prison was served because of the unrelated crime, it is equally true that such sentence was served because of the Tulia crime. And even though the pardon was applicable directly to, and only to, the Tulia crime, it was applicable to both prison sentences. Thus, in accordance with section 103.001(a), the defendant "received a full pardon on the basis of innocence for the crime for which" *both* prison sentences were served. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 103.001(a) (Vernon 2005).

In sum, but for the wrongful Tulia conviction the defendant would not have served the concurrent prison sentence, and thus subsection (a)(2)(A) applies to the concurrent sentence, and thus subsection (b) does not eliminate the defen-

---

**2.** An edition of Black's Law Dictionary, which is more recent than the Comptroller's quoted source, defines "probation" as "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison." BLACK'S LAW DICTIONARY 1322 (9th ed.2009).

dant's entitlement to compensation for the Tulia sentence.

Op. Tex. Att'y Gen. No. GA–0531, at 3.

 This analysis is consistent with the Act's apparent purpose which according to its title is, "Compensation to Persons Wrongfully Imprisoned." *See* TEX. CIV. PRAC. & REM.CODE § ch. 103. Moreover, it seems unlikely that the Legislature intended to compensate wrongfully-imprisoned probationers, and not parolees, given the similarity in their circumstances. The Court of Criminal Appeals has indicated that probation is essentially the power of parole extended to the judiciary. *Ex Parte Hale,* 117 S.W.3d 866, 870 (Tex. Crim.App.2003) (noting that "the power to release prisoners on conditions has been given to trial courts as well as the executive"). We find the attorney general's reasoning in the Tulia opinion persuasive and conclude that section 103.001(b)'s concurrent-sentence restriction does not apply when the wrongful conviction is the cause of the person serving a concurrent sentence in prison. Smith was therefore entitled to compensation for the period from August 7, 1986, when Smith's wrongful sentence began, to June 11, 1987, when his concurrent sentence on the 1970 robbery conviction discharged.

\*　　\*　　\*　　\*　　\*　　\*

We assume that the Comptroller will comply with this opinion and adjust Smith's compensation under the Act accordingly. In the event she fails to do so, a writ of mandamus will issue. The petition for writ of mandamus is conditionally granted.