**EX PARTE Robert Burns SPRINGSTEEN IV**

NO. 03–14–00739–CV

Court of Appeals of Texas, Austin.

Filed: December 21, 2016

Broadus A. Spivey, Charles F. Baird, James W. Hackney, Amber D. Farrelly, for Robert Burns Springsteen.

Patrick M. Kelly, Sherine E. Thomas, Andrew M. Williams, for the State of Texas.

Before Chief Justice Rose, Justices Pemberton and Bourland

## OPINION

Bob Pemberton, Justice

The issues presented in this appeal concern whether a claimant can bring suit under the Uniform Declaratory Judgments Act (UDJA)[1] to establish a right to compensation under Texas's wrongful-imprisonment statute.[2] The district court concluded that such a suit was beyond its subject-matter jurisdiction to adjudicate. We agree and affirm.

## BACKGROUND

### Compensation for wrongful imprisonment in Texas

An initial overview of Texas law governing compensation for wrongful imprisonment aids understanding of the suit in question and, ultimately, the issues on appeal. It is well established that the common law—the starting or default legal rule—recognizes no right to recover against the government for wrongful or erroneous imprisonment,[3] and sovereign

---

1. See Tex. Civ. Prac. & Rem. Code § 37.001–.011.

2. See id. §§ 103.001–.154.

3. See State v. Oakley, 227 S.W.3d 58, 62 (Tex. 2007) (observing that "the common-law rule ... entitl[es] claimants to nothing from a state that wrongfully imprisoned them"); see also City of Beaumont v. Bouillion, 896 S.W.2d 143, 150 (Tex. 1995) ("Our state does not recognize a common law cause of action for damages to enforce constitutional

rights."); State v. Clements, 319 S.W.2d 450, 452–53 (Tex. Civ. App.–Texarkana 1958, writ ref'd) (dismissing false-imprisonment claim against State, notwithstanding legislative resolution authorizing suit, after concluding that Texas Constitution Article III, Section 51–c (discussed below) was not self-executing; conclusion "eliminate[d] any question that a common law cause of action for false imprisonment or action or recovery against the State of Texas was made available" to the claimant through the amendment).

immunity—the age-old common-law doctrine that "generally shields our state government's 'improvident acts' ... against the litigation and judicial remedies that would be available if the same acts were committed by private persons" [4]—would bar both jurisdiction and liability in any lawsuit purporting to seek that relief in court.[5] Texas has departed somewhat from the strict common-law rule, however, beginning with a 1950s–era amendment to the Texas Constitution that authorized the Legislature, "under such regulations and limitations as the Legislature may deem expedient," to "grant aid and compensation" to any person fined or imprisoned under the laws of this State "for any offense for which he or she is not guilty." [6] Because the amendment in itself did not grant a right or means of compensation, but merely authorized the Legislature to create one,[7] any recovery for wrongful or erroneous convictions in Texas has depended upon statutes enacted pursuant to the constitutional grant and "such regulations and limitations as the Legislature has deemed expedient" within them. The most recent iteration of these statutes—and the only one presently existing—is found in Chapter 103 of the Civil Practice and Remedies Code,[8] now commonly known as the Tim Cole Act.

In its current form, Chapter 103 in material part limits eligibility for compensation solely to a person who has "served in whole or in part a sentence in prison under the laws of this state" and also satisfies one of three alternative additional prerequisites that are prescribed in Paragraphs (A), (B), and (C) of Section 103.001(a)(2):

(2) the person:

4. *Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 172 (Tex. App.–Austin 2013, no pet.) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006)).

5. *See State v. Young*, 265 S.W.3d 697, 703 (Tex. App.–Austin 2008, pet. denied) ("All things being equal, sovereign immunity would bar a suit against the State for damages caused by wrongful imprisonment." (citing *City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007) ("We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity."); *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002) ("Sovereign immunity protects the State from lawsuits for money damages."))); *see also Bacon*, 411 S.W.3d at 172–73 (recognizing that the "principle of judicial deference [to legislative policy judgments] embodied in sovereign immunity extends not only to the Legislature's choices as to whether state funds should be spent on litigation and court judgments versus other priorities, but equally to the policy judgments embodied in the constitutional or statutory delegations that define the parameters of an officer's discretionary authority and the decisions the officer makes within the scope of the authority" (citations omitted)).

6. Tex. Const. art. III, § 51–c. Section 51–c was apparently calculated in part to ensure that the contemplated compensation statute would not run afoul of the prohibition in Article III, Section 51 against legislative grants of public monies to individuals. *See id.* § 51 ("The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever ...."); *Clements*, 319 S.W.2d at 452 ("The expressed objectives of the amendment are to: (1) Make innocent persons fined or imprisoned for violating the law of Texas a subject of aid and compensation; (2) remove, as to the class of persons named in the amendment, the prohibition of Sec. 51, Art. III against granting funds to an individual; [and] (3) empower enactment of such regulations and limitations the Legislature decides will promote the objective of aid and compensation to the class of persons named.").

7. *See Clements*, 319 S.W.2d at 452–53 (holding that Article III, Section 51–c was not self-executing).

8. Tex. Civ. Prac. & Rem. Code §§ 103.001–.154.

(A) has received a full pardon on the basis of innocence for the crime for which the person was sentenced;

(B) has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced; or

(C) has been granted relief in accordance with a writ of habeas corpus and:

(i) the state district court in which the charge against the person was pending has entered an order dismissing the charge; and

(ii) the district court's dismissal order is based on a motion to dismiss in which the state's attorney states that no credible evidence exists that inculpates the defendant and, either in the motion or in an affidavit, the state's attorney states that the state's attorney believes that the defendant is actually innocent of the crime for which the person was sentenced.[9]

Paragraphs (B) and (C) are of primary importance in this case, and we should initially note two of their features that will become relevant to the discussion. First, Paragraphs (B) and (C) each require that a claimant *"has been granted relief in accordance with a writ of habeas corpus."* [10] Second, Paragraphs (B) and (C) each incorporate an additional requirement that the claimant be deemed *"actually innocent of the crime for which the person was sentenced."* [11] Paragraph (B) requires that the "relief in accordance with a writ of habeas corpus" must be *"based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced."* [12] Paragraph (C), on the other hand, requires "relief in accordance with a writ of habeas corpus" plus dismissal of pending charges "based on a motion to dismiss in which the state's attorney states that no credible evidence exists that inculpates the defendant and, either in the motion or in an affidavit, the state's attorney *states that the state's attorney believes that the defendant is actually innocent of the crime for which the person was sentenced.*"[13]

The Texas Supreme Court has held that "actually innocent" within Paragraph (B)— and which logically would also apply to the parallel usage in (C)—denotes either of the two "actual innocence" concepts that have evolved in criminal jurisprudence as a basis for obtaining relief through post-conviction habeas corpus [14]—the "bare" or "*Herrera*–type" actual-innocence theory founded on newly discovered evidence or the procedurally-focused "*Schlup*-type" theory [15]—such that a habeas petitioner

9. *Id.* § 103.001(a)(2).

10. *Id.* § 103.001(a)(2)(B), (C) (emphasis added).

11. *Id.* (emphasis added).

12. *Id.* § 103.001(a)(2)(B) (emphasis added).

13. *Id.* § 103.001(a)(2)(C) (emphasis added).

14. *See In re Allen,* 366 S.W.3d 696, 703–09 (Tex. 2012) (orig. proceeding).

15. *See id.* at 700, 703–04 (stating that "[a] *Herrera* claim is a substantive claim in which the person asserts a bare claim of innocence based solely on newly discovered evidence," and entails a showing "by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence," while "a *Schlup*–type claim is procedural: it provides a gateway through which a habeas petitioner must pass to have his otherwise barred constitu-

successful under either theory could qualify for compensation under Paragraph (B).[16] This Court had previously reached a similar conclusion in *State v. Young* when construing a prior version of Section 103.001 that had not contained an explicit reference to habeas corpus, but based compensation eligibility on whether the claimant had been "granted relief on the basis of actual innocence for the crime for which the person was sentenced." [17] Considering that "actual innocence" had acquired a specific meaning and significance in habeas-corpus jurisprudence, we reasoned that " 'has been granted relief based on actual innocence' " as used in the then-applicable version of Section 103.001 "connotes both a specific standard of proof and a procedural framework through which such relief is obtained—a [post-conviction] writ of habeas corpus on grounds of 'actual innocence.' " [18] Consequently, we held that a claimant who had obtained reversal of a criminal conviction on direct appeal had not been "granted relief based on actual innocence" and was not eligible for compensation.[19]

Chapter 103 also prescribes the procedural mechanism by which a claimant must seek any compensation for which he or she is made eligible under Section 103.001. Although the Legislature had previously authorized recovery under Chapter 103 through suit against the State,[20] the sole means provided under the current version is administrative—the claimant must make application with the Comptroller [21] by the third anniversary of the date either (as applicable to the basis for eligibility) the person received the pardon required under Paragraph (A) of Section 103.001(a)(2), the order of dismissal required by Paragraph (C) was signed, or "the person's application for a writ of habeas corpus was granted as provided by [Paragraph (B)]." [22] Chapter 103 further specifies that the claimant must submit a completed application form together with documentary support for the claim, which must include "a verified copy of the pardon, court order, motion to dismiss, and affidavit, as applicable," on which the claimant relies to estab-

tional claim considered on the merits" (internal citations and quotations omitted)).

**16.** *See id.* at 707.

**17.** 265 S.W.3d at 704–08 (construing Act of May 27, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280, 5280 (amended 2009, 2011) (current version at Tex. Civ. Prac. & Rem. Code § 103.001)).

**18.** *Young*, 265 S.W.3d at 705–07.

**19.** *See id.* at 708 ("Young did not obtain relief from his criminal conviction based on his 'actual innocence,' much less obtain habeas corpus relief from his conviction on that ground. Consequently, he has not 'been granted relief on the basis of actual innocence for the crime for which the person was sentenced,' as the legislature used that phrase in chapter 103 of the civil practice and remedies code. We are bound to give effect to the legislature's intent."). *Accord State v. Heim-*

*lich*, No. 03–05–00827–CV, 2008 WL 2938826, 2008 Tex. App. LEXIS 5824 (Tex. App.–Austin July 31, 2008, pet. denied) (mem. op.) (applying this version of Chapter 103 and *Young* to same effect with claimant who had obtained reversal of criminal conviction on direct appeal).

**20.** *See* Act of May 27, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280, 5281–82 (authorizing suit to recover under Chapter 103), *repealed by* Act of May 14, 2009, 81st Leg., R.S., ch. 180, § 12, 2009 Tex. Gen. Laws 523, 526. The version of Chapter 103 we addressed in *Young* had this feature. *See* 265 S.W.3d at 699, 703–04, 708 (analyzing eligibility issue in terms of the scope of the statute's waiver of sovereign immunity).

**21.** *See* Tex. Civ. Prac. & Rem. Code § 103.051(a).

**22.** *Id.* § 103.003(2).

lish eligibility for compensation.[23] The Comptroller is then charged with determining the claimant's eligibility from these verified documents, and "shall deny the claim" if the documents "do not clearly indicate on their face that the person is entitled to compensation under Section 103.001(a)(2)."[24] Chapter 103 additionally specifies that the Comptroller's eligibility determinations are "ministerial,"[25] denoting legislative intent to leave nothing to the Comptroller's discretion.[26]

If the Comptroller determines that the claimant is eligible for compensation, the Comptroller is then to ascertain the amount of compensation owed by examining the documentation under standards prescribed elsewhere in the statute.[27] If, on the other hand, the Comptroller denies the claim, the Comptroller must "state the reason for the denial" and provide the claimant thirty days in which to submit an application "to cure any problem identified."[28] In the event the claimant submits a second or revised application in an attempt to cure the defect, the Comptroller must again determine the claimant's eligibility and (if found eligible) the amount owed.[29]

In the event the Comptroller denies this second or revised claim, the Legislature has provided for judicial review to the extent "the claimant may bring an application for mandamus relief."[30] Although not specified explicitly in Chapter 103 itself, this mandamus proceeding must be filed in the Texas Supreme Court, as only that court has jurisdiction to issue the writ against the Comptroller.[31]

### Springsteen's efforts to obtain compensation

The claimant here, Robert Burns Springsteen, IV, was imprisoned for several years—some spent on death row—after being convicted in Travis County of capital murder and sentenced to death on evidence implicating him in Austin's notorious "Yogurt Shop Murders." Springsteen's trial had predated the U.S. Supreme Court's seminal *Crawford* decision concerning "testimonial" hearsay and the Confrontation Clause,[32] and in 2006 the Court of Crimi-

**23.** *Id.* § 103.051(a)(2).

**24.** *Id.* § 103.051(b), (b–1).

**25.** *See id.* § 103.051(b–1) ("The comptroller's duty to determine the eligibility of a claimant under this section is purely ministerial."); *see also In re Smith*, 333 S.W.3d 582, 587 (Tex. 2011) (orig. proceeding) ("The current statute [Chapter 103] directs the Comptroller to determine eligibility and the amount owed according to its terms, and the proceeding here seeks to compel the Comptroller to perform her ministerial duty under the Act.").

**26.** *See In re Phillips*, 496 S.W.3d 769, 774 (Tex. 2016) (explaining, with reference to Comptroller's "ministerial" determinations under Chapter 103, that "[a]n officer's duty is ministerial when the 'law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion.'" (quoting *Anderson v.*

*City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991))).

**27.** *See* Tex. Civ. Prac. & Rem. Code § 103.051(b)(2).

**28.** *See id.* § 103.051(d).

**29.** *See id.*

**30.** *Id.* § 103.051(e); *see Smith*, 333 S.W.3d at 585 ("The Comptroller's decision [under Chapter 103] is not appealable, but a claimant may seek review through an original mandamus proceeding.").

**31.** *See Smith*, 333 S.W.3d at 585 (citing Tex. Const. art. V, § 3; Tex. Gov't Code § 22.002(c); *AT & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 672 (Tex. 1995)).

**32.** *See Crawford v. Washington*, 541 U.S. 36, 50–52, 124 S.Ct. 1354, 158 L.Ed.2d 177

nal Appeals reversed his conviction based on the State's use of a co-defendant's statement in a manner proving to be inconsistent with *Crawford*.[33] But the court overruled a challenge by Springsteen to the legal sufficiency of the evidence supporting his conviction (thus permitting retrial) and to the voluntariness and admissibility of a purported confession he himself had made.[34]

In 2008, as Springsteen remained incarcerated awaiting retrial, DNA testing of crime-scene evidence through techniques not previously available revealed the DNA of an unknown male and not that of Springsteen or others previously charged. Ensuing investigation by the State failed to ascertain the unknown person's identity or involvement in the crimes. Eventually, as a July 2009 trial setting approached, the State, though professing its continuing belief that Springsteen had been involved in the Yogurt Shop Murders, obtained a continuance in light of the "risk" of proceeding to trial against Springsteen on the then-existing state of the evidence. The trial court granted the continuance but released Springsteen on bond, reset trial for late October, and ordered that no further continuances would be granted based on the State's need to investigate the DNA evidence. With continued investigation remaining unfruitful as the October trial date approached, the State, terming the action its "only viable option," moved for and obtained dismissal of all charges against Springsteen.

With the previous criminal charges against him thus resolved—though the potential for future prosecution presently remains, at least legally[35]—Springsteen has sought remedy for his "wrongful imprisonment" and "damaged reputation" through compensation under Chapter 103. His foundational premise is that the events in his criminal proceedings, particularly the revelation of the new DNA evidence, establish or could be shown to establish his "actual innocence," in a bare-innocence sense, of the Yogurt Shop Murders. This, Springsteen reasons, "functionally" satisfies or would satisfy Paragraph (B)'s requirement of "a court finding or determination that the person is actually innocent of the crime for which the person was sentenced," and he similarly posits that the State's motion to dismiss his charges "effectively" amounted to the State's concessions of "actual innocence" and lack of evidence as required by Paragraph (C).[36]

---

(2004) (clarifying that Confrontation Clause proscribed use of "testimonial" hearsay, i.e., "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial").

33. *Springsteen v. State*, No. AP–74,226, 2006 Tex. Crim. App. LEXIS 2340, at *8–25 (Tex. Crim. App. 2006) (not designated for publication) (holding that written statement from co-defendant Michael Scott implicating Springsteen had been "testimonial" and thus inadmissible under *Crawford*, and that admission of statement at trial had not been harmless error), *cert. denied*, 549 U.S. 1253, 127 S.Ct. 1382, 167 L.Ed.2d 161 (2007); *see Crawford*, 541 U.S. at 50–52, 124 S.Ct. 1354.

Springsteen's death sentence had previously been commuted to life imprisonment after the U.S. Supreme Court held that the Eighth Amendment prohibited imposition of the death penalty for offenses committed by minors (as Springsteen would have been). *See Roper v. Simmons*, 543 U.S. 551, 574–75, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

34. *See Springsteen*, 2006 Tex. Crim. App. LEXIS 2340, at *2–7, *25–46.

35. There is no statute of limitations for capital murder. *See* Tex. Code Crim. Proc. art. 12.01(1)(A).

36. *Cf.* Tex. Civ. Prac. & Rem. Code § 103.001(a)(2)(C) (State's attorney must "state[] that no credible evidence exists that inculpates the defendant and, either in the motion or in an affidavit, ... state[] that the state's attorney believes that the defendant is

As for the additional requirement of "relief in accordance with a writ of habeas corpus" common to both Paragraphs (B) and (C),[37] Springsteen acknowledges that he obtained relief from his conviction through direct appeal, not habeas corpus, a fact that our *Young* decision deemed fatal to a compensation claim made under the prior version of Chapter 103.[38] But Springsteen perceives the current statute to be broader and distinguishable from the version we addressed in *Young* because it requires "relief *in accordance with* a writ of habeas corpus," phrasing he views as leaving room for relief that can be said to have the same effect as relief through post-conviction habeas corpus.[39] From this premise, Springsteen reasons that "[t]he relief provided by a Court of Criminal Appeals's reversal of conviction is . . . in accordance with a writ of habeas corpus" because "[b]oth accomplish the same goal—releasing from prison a person who constitutionally should not be there."

Springsteen initially sought Chapter 103 compensation by making application with the Comptroller.[40] The Comptroller denied the claim, concluding that Springsteen had failed to present documentation reflecting any of Section 103.001(a)(2)'s three alternative bases for compensation eligibility.[41]

Springsteen then filed a second or revised claim with the Comptroller, which was also denied.[42]

In response to the Comptroller's rulings, Springsteen has not pursued any attempt to obtain the mandamus relief from the Texas Supreme Court that Chapter 103 authorizes.[43] He has turned to other courts instead, beginning with the United States District Court for the Western District of Texas. In that forum, Springsteen sued the Comptroller seeking a declaratory judgment that he is "actually innocent" of the Yogurt Shop Murders as a means of establishing entitlement to compensation under Paragraph (B), coupled with a claim for mandamus relief to compel the Comptroller to make payment in the event she denied his claim post-declaration.[44] The district court dismissed the claims for want of jurisdiction, citing Eleventh Amendment immunity and lack of standing.[45] In regard to standing, the court reasoned that the sought-after declaration would ultimately fail to redress the harm complained of— "being denied compensation under Chapter 103"—because entitlement to compensation under Chapter 103 "is a question first for the Texas Comptroller, and then for the Texas Supreme Court," and that Paragraph B in any event required an

---

actually innocent of the crime for which the person was sentenced").

37. *Id.* § 103.001(a)(2)(B) & (C).

38. *See Young*, 265 S.W.3d at 708.

39. Springsteen relies on dictionary definitions equating "accordance" with "[a]greement, harmony, concord; conformity," Black's Law Dictionary 17 (6th ed. 1990), and a 1976 Texas Supreme Court opinion holding that "in accordance with his ability" as used in the then-new Family Code effected no material change from the prior statute referring to "commensurate with his financial ability." *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976).

40. *See* Tex. Civ. Prac. & Rem. Code § 103.051(a).

41. *See id.* § 103.051(b)–(d).

42. *See id.* § 103.051(d).

43. *See id.* § 103.051(e).

44. *See Springsteen v. Combs*, No. A–13–CV– 427–LY, 2013 WL 5305312, 2013 U.S. Dist. LEXIS 133971 (W.D. Tex. Sept. 19, 2013), *report and recommendation adopted*, No. A– 13–CV–427–LY (W.D. Tex. Nov. 6, 2013).

45. *See id.* 2013 WL 5305312, at *2–7, 2013 U.S. Dist. LEXIS 133971 at *7–20.

actual-innocence finding made "in the context of a habeas corpus proceeding."[46]

Following the dismissal of Springsteen's federal suit, Springsteen filed—in Bexar County state district court—the suit giving rise to this appeal. Similar to his federal action, Springsteen's present suit seeks to establish a right to compensation under Chapter 103 through three alternative forms of declaratory relief under the UDJA. First, Springsteen prays that the court "clarify and declare his rights and status under TCPRC 103.001, issuing a declaratory judgment that he is entitled to the relief for which he qualifies under the statute." "Alternatively, should the Court find that Petitioner does not already fit within the parameters of 103.001," Springsteen prays that "he be given a forum within this court to litigate that issue, pursuant to his 14th Amendment right to due process, and ... prove to [the trial court] that he does indeed fit within the class for whom the Tim Cole Act was enacted by the Legislature." As illuminated by subsequent briefing and argument, the former claim seeks application of Paragraphs (B) and (C) to the already-existing factual or evidentiary record, while the latter claim contemplates additional development of an underlying "actual innocence" ground as a means of establishing eligibility for compensation under (B). Springsteen's third claim seeks the relief requested by the second claim, but in an "alternative forum," if needed.

Springsteen purported to style his declaratory-judgment suit as an "ex parte" proceeding that did not seek relief against any particular defendant or adverse party. However, the prosecutor having jurisdiction over any criminal proceedings arising from the Yogurt Shop Murders—Travis County District Attorney Rosemary Lehmberg, in her official capacity (Lehmberg)—made filings in opposition to Springsteen's claims. Springsteen ultimately conceded Lehmberg's "standing" as an "interested party" whom the UDJA would require to be joined in the action[47] and served her with process, though he endeavored to distinguish her status of "interested party" from that of a "defendant" in an apparent attempt to avoid implicating sovereign immunity.[48] The "interested party" Lehmberg moved to transfer venue to Travis County (ultimately successfully), answered, and asserted a plea to the jurisdiction. In her plea, Lehmberg asserted that the suit was barred by sovereign immunity; that it failed to present any justiciable controversy for reasons that included, but were not limited to, the standing defects identified in Springsteen's federal action; that it improperly sought a declaration of rights regarding criminal liability; and that it failed to allege a viable constitutional claim.

---

46. *Id.* 2013 WL 5305312, at *6, 2013 U.S. Dist. LEXIS 133971 at *19.

47. *See* Tex. Civ. Prac. & Rem. Code § 37.006(a) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties."). In fact, in his live petition, Springsteen requested that the district court restyle the case to "reflect the standing of the parties, namely as 'Robert Burns Springsteen, IV v. Rosemary Lehmberg, in her official capacity as Travis County District Attorney, Interested Party,'" al-though the case has retained its original style through judgment and appeal.

48. *See, e.g.*, *Bacon*, 411 S.W.3d at 172 (sovereign immunity "generally extends to Texas state officials who are sued in their official capacities because that 'is merely 'another way of pleading an action against the entity of which [the official] is an agent'" (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (quoting *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007)))).

Following a hearing at which only argument was presented, the Travis County district court granted Lehmberg's plea without specifying grounds and dismissed Springsteen's suit with prejudice. This appeal ensued.

## ANALYSIS

■ Springsteen urges that the district court erred in concluding that it lacked subject-matter jurisdiction over his claims. Although he structures his arguments as five issues corresponding to the jurisdictional challenges Lehmberg raised in her plea,[49] we can focus our analysis on a narrower set of legal principles that are ultimately dispositive.[50]

■ A central theme of Springsteen's arguments on appeal is that his claims are justiciable, are not barred by sovereign immunity, and should otherwise survive to the merits because they seek "statutory construction" of Chapter 103 and declarations relating to his "rights" or "status" under it.[51] He further maintains that the UDJA confers jurisdiction on the district court to entertain these claims and that sovereign immunity would be no bar even apart from the significance he ascribes to the suit's "ex parte" characterization. But the UDJA is not so powerful a weapon in establishing jurisdiction.

■ It is true that the UDJA generally authorizes claimants "whose rights, status, or other legal relations are affected by a statute" to "have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal

49. Springsteen asserts that (1) sovereign immunity does not bar his suit; (2) his suit "presents justiciable issues which the [district court] had power to decide under the [UDJA]"; (3) he established jurisdiction under the Texas Constitution's Open Courts provision; (4) his suit seeks "a civil court's interpretation of a civil statute," not a ruling on a criminal matter; and (5) his suit "was not in any way barred by his earlier federal court action."

50. See Tex. R. Civ. P. 47.1. We review questions of subject-matter jurisdiction de novo. See, e.g., University of Houston v. Barth, 403 S.W.3d 851, 854 (Tex. 2013) (per curiam) (citing Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004)). This inquiry is not necessarily limited to the jurisdictional challenges or issues raised by the parties. See Finance Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 580 (Tex. 2013) (observing that a requirement for subject-matter jurisdiction "can be—and if in doubt, must be—raised by a court on its own at any time." (citing Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 445–46 (Tex. 1993)); see also Texas Ass'n of Bus., 852 S.W.2d at 445 ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties."). As the

claimant, Springsteen had the burden of pleading or presenting evidence of facts that would demonstrate the district court's jurisdiction to entertain his claims. See City of Elsa v. Gonzalez, 325 S.W.3d 622, 625 (Tex. 2010).

51. In the same vein, Springsteen suggests that "the merits" of his claims seeking "construction" of Chapter 103 are beyond the proper scope of a jurisdictional inquiry, requiring us to reserve all questions regarding the statute's meaning for subsequent proceedings. To the contrary, courts may (and often must) resolve at a preliminary stage jurisdictional issues that implicate the merits. See, e.g., Vernco Constr., Inc. v. Nelson, 460 S.W.3d 145, 149 (Tex. 2015) (per curiam) (recognizing that jurisdictional inquiry can be "intertwined with the merits" and that the relationship impacts only procedures for resolving any disputed jurisdictional facts); Texas Dep't State Health Servs. v. Balquinta, 429 S.W.3d 726, 738 (Tex. App.–Austin 2014, pet. dism'd) ("Although a plea to the jurisdiction is a dilatory plea, the purpose of which is generally to defeat an action without regard to whether the claims asserted have merit, the required jurisdictional inquiry may nonetheless implicate the merits in some circumstances." (internal citations and quotations omitted)).

relations thereunder."[52] But this authorization is not a grant of *jurisdiction* to entertain such a claim—as the Texas Supreme Court has instructed us, the UDJA generally "does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'"[53] Nor, similarly, can "a litigant's couching its requested relief in terms of declaratory relief . . . alter the underlying nature of the suit."[54] And as the high court has clarified in recent years, the UDJA's sole feature that can impact trial-court jurisdiction to entertain a substantive claim is the statute's implied limited waiver of sovereign or governmental immunity that permits claims challenging the validity of ordinances or statutes.[55] It has squarely repudiated the once-widespread notion that the UDJA confers some broader right to sue government to obtain "statutory construction" or a "declaration of rights."[56]

Springsteen has not asserted and indeed disclaims any challenge to the validity of Chapter 103 (and understandably so, as he seeks compensation made available under that statute). Consequently, the UDJA in itself ultimately has no bearing on whether Springsteen's claims invoke the district court's jurisdiction. We must look instead to the claims' underlying substantive nature in order to determine whether the district court had jurisdiction to entertain them.[57] Doing so reveals essentially the same jurisdictional defects the federal court identified in holding that Springsteen lacked standing to prosecute his earlier claims there.

 By suing for declarations that he is entitled to compensation under Chapter 103 or satisfies particular eligibility requirements under Paragraphs (B) or (C), Springsteen seeks determinations that Texas law has vested in the Comptroller, subject to review by the Texas Supreme Court.[58] The right to compensation under Chapter 103 is purely a creature of statute—no right or entitlement to compensation for wrongful imprisonment would ex-

---

52. Tex. Civ. Prac. & Rem. Code § 37.004(a).

53. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (per curiam) (adding that "we have consistently stated" that principle (quoting *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 444))).

54. *Sawyer Trust*, 354 S.W.3d at 388 (citing *Heinrich*, 284 S.W.3d at 370–71; *IT–Davy*, 74 S.W.3d at 855).

55. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634–35 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code § 37.006(b); *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)). The UDJA would also waive immunity as against attorney's-fee awards incident to substantive claims the statute authorizes. *See Leeper*, 893 S.W.2d at 446 (citing Tex. Civ. Prac. & Rem. Code § 37.009).

56. *See Sefzik*, 355 S.W.3d at 621–22 ("the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute of other law"); *Sawyer Trust*, 354 S.W.3d at 388 ("there is no general right to sue a state agency for a declaration of rights" in light of limited scope of UDJA's immunity waiver).

57. *See, e.g., Sawyer Trust*, 354 S.W.3d at 389 ("[t]he central test for determining jurisdiction" looks to whether "the 'real substance' of the plaintiffs' claims" is within court's jurisdiction (citing *Dallas Cnty. Mental Health & Retardation v. Bossley*, 968 S.W.2d 339, 343–44 (Tex. 1998))).

58. *Accord Springsteen*, 2013 WL 5305312, at *6, U.S. Dist. LEXIS 133971, at *19 (similarly recognizing that Springsteen's entitlement to compensation under Chapter 103 "is a question first for the Texas Comptroller, and then for the Texas Supreme Court").

ist otherwise, as previously explained.[59] That statutory creation, further, was enacted pursuant to a constitutional authorization that also explicitly permits the Legislature to impose "such regulations and limitations" on the compensation right "as the Legislature may deem expedient."[60] The Legislature has seen fit not only to prescribe specific eligibility requirements and other substantive limitations on this statutorily-created compensation right, but also a specific procedural mechanism for obtaining that remedy—application to the Comptroller, with judicial review solely by mandamus to the Texas Supreme Court. This statutory structure, as the Texas Supreme Court has confirmed recently, embodies the vesting of exclusive jurisdiction in the Comptroller to make the initial determinations with which Chapter 103

charges him.[61] And where, as here, the Legislature has vested exclusive jurisdiction in an agency to make the initial determination in a dispute, it displaces any jurisdiction that the district court might otherwise possess over that subject matter.[62]

Likewise, any attempt by Springsteen to challenge the Comptroller's determinations through his suit would infringe upon the exclusive jurisdiction of the Texas Supreme Court.[63] To the extent Springsteen's references to "Due Process" attempt to invoke some broader scope or means of judicial review,[64] the asserted "property right" on which he predicates his arguments amounts merely to whatever compensation the Comptroller, subject to Texas Supreme Court review, determines he is

---

59. See supra pp. 790–92.

60. Tex. Const. art. III, § 51–c.

61. See Phillips, 496 S.W.3d at 773 (holding that "the Comptroller's authority to determine compensation owed under [Chapter 103]" is "exclusive"); see also, e.g., Thomas v. Long, 207 S.W.3d 334, 341–42 (Tex. 2006) (statutory scheme permitting agency "to extend specified rights to employees that are not available at common law" that were to be enforced through specified agency procedures conferred exclusive jurisdiction on agency over those matters); In re Entergy Corp., 142 S.W.3d 316, 321 (Tex. 2004) ("An agency has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute."); Subaru of Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002) (agency may be delegated exclusive jurisdiction to make initial determination either through explicit grant or by implication from a "pervasive regulatory scheme"); In re Ament, 890 S.W.2d 39, 41 (Tex. 1994) (per curiam) (discussing general rule that when both right and remedy are derived not from the common law but from statute, the statutory remedy is exclusive).

62. See, e.g., Thomas, 207 S.W.3d at 342 (district court lacked subject-matter jurisdiction

over matter within agency's exclusive jurisdiction, and "[t]he fact that [the claimant] fashioned this suit as a declaratory judgment action does not change this analysis"); see also Tex. Const. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.") (emphasis added).

63. See Keystone RV Co. v. Texas Dep't Motor Vehicles, 507 S.W.3d 829, No. 03–15–00644–CV, 2016 WL 7049245, at *1, 2016 Tex. App. LEXIS 12106, at *3 (Tex. App.–Austin Nov. 10, 2016, no pet. h.) (op.) ("it is the Legislature's sole prerogative to decide whether, to what extent, or with respect to which courts" judicial review of administrative order should be permitted).

64. See, e.g., In re Office of Att'y Gen., 456 S.W.3d 153, 157 (Tex. 2015) ("It is well settled that trial courts may review an administrative action only if a statute provides a right to judicial review, or the action adversely affects a vested property right or otherwise violates a constitutional right.").

owed under Chapter 103.[65] Consequently, Springsteen has not pleaded any viable Due Process–based claim.[66] Similarly, while Springsteen also refers to the Open Courts provision of the Texas Constitution,[67] that protection extends only to a "well-established common-law cause of action," [68] and none is implicated here.[69]

Springsteen fares no better in attempting to invoke the district court's jurisdiction for purposes of litigating, through the UDJA, an underlying "actual innocence" claim in order to establish eligibility for compensation under Paragraph (B). Contrary to Springsteen's reasoning, his sought-after declaration of "actual innocence," were he to succeed in obtaining it, would have no bearing on his asserted eligibility for compensation under Paragraph (B). We need go no farther than to observe that Paragraph (B) requires that Springsteen "has been granted relief in accordance with a writ of habeas corpus *that is based on* a court finding or determination that the person is actually innocent of the crime for which the person was sentenced." [70] The Legislature's use of "based on" denotes that the "court finding or determination" of actual innocence must be a foundational or fundamental part of the "relief." [71] Accordingly, even accepting Springsteen's premise that the reversal of his conviction on direct appeal can be considered "relief in accordance with habeas corpus," [72] the actual-innocence declaration he seeks would lack the required temporal and substantive nexus to that reversal. The declaration would thereby amount merely to an abstract proposition of law having no impact on Springsteen's asserted eligibility for compensation under Para-

---

65. The same is true of Springsteen's asserted interest in "regain[ing] his clear reputation" or "restor[ing] his damaged reputation," as he does not seek remedy for reputational injury apart from his claimed entitlement to compensation under Chapter 103.

66. *See Creedmoor–Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 524–26 (Tex. App.–Austin 2010, no pet.) (rejecting similar attempt to invoke Due Process and Open Courts protections with respect to rights created by statute and made contingent on regulatory decisions).

67. Tex. Const. art. I, § 13.

68. *See Texas Ass'n of Bus.*, 852 S.W.2d at 448.

69. *Oakley*, 227 S.W.3d at 62 ("[T]he common-law rule ... entitl[es] claimants to nothing from a state that wrongfully imprisoned them."); *Creedmoor–Maha*, 307 S.W.3d at 524 (" '[T]here is no common-law cause of action for judicial review of an agency's administrative act.' " (quoting *City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 845 (Tex. App.–Austin 2000, no pet.))).

70. Tex. Civ. Prac. & Rem. Code § 103.001(a)(2)(B) (emphasis added).

71. *See* Webster's Third New Int'l Dictionary 180 (2002) (defining "base" (n.) as "main ingredient," and "fundamental part of something"); The American Heritage Dictionary of the English Language 148 (2011) (defining "base" (n.) as "fundamental principle," "underlying concept" "fundamental ingredient" and "chief constituent"); *see also Black's Law Dictionary* 180 (10th ed. 2014) (defining "base" (v.) as "to use (something) as the thing from which something else is developed").

72. *But cf.* Tex. Civ. Prac. & Rem. Code § 103.003(2) (three-year filing deadline with respect to claims for compensation under Paragraph (B) tied to date "the person's *application for a writ of habeas corpus was granted as provided by Section 103.001(a)(2)(B)*" (Emphasis added)); *see also, e.g., Ochsner v. Ochsner*, No. 14–0638, —— S.W.3d ——, 2016 WL 3537255, 2016 Tex. LEXIS 569 & 17 (Tex. June 24, 2016) ("We look to the statutory scheme as a whole ... not to snippets taken in isolation."); *see also Young*, 265 S.W.3d at 704–06 (discussing at length the conceptual and procedural differences between relief through reversal on direct appeal versus relief through an actual-innocence habeas-corpus claim).

graph (B)—the distinguishing characteristic of an advisory opinion.[73] The district court lacked subject-matter jurisdiction to entertain the claim.[74]

Springsteen has not demonstrated any alternative jurisdictional basis for his claims. He has couched his claims entirely as a means of establishing a right to compensation under Chapter 103, further disclaiming any intent to litigate actual innocence as might bear upon any potential future criminal prosecution. And to the extent Springsteen's claims would seek to affect his status as against the criminal law, multiple additional jurisdictional barriers would come into play, including jurisdictional prohibitions against civil courts issuing UDJA declarations of rights and status under the criminal law,[75] and sovereign immunity. Sovereign immunity could not be avoided merely through Springsteen's insistence on styling his suit as an "ex parte" proceeding, as the substantive effect of any claim seeking to determine his status under the criminal law would operate against the State of Texas, in whose name and by whose authority the criminal law is enforced.[76]

We must credit Springsteen's counsel with diligence and creativity in their attempts to overcome governing law that is, bottom line, highly unfavorable to a claimant in their client's situation. But we are bound to follow that governing law, and it dictates the same basic conclusion as in *Young*—the district court lacks subject-matter jurisdiction to adjudicate Springsteen's claims. It is similarly beyond judicial jurisdiction to decide whether that governing law should provide different or more generous remedies to the formerly imprisoned than it does—such decisions, as we also recognized in *Young*, are the province of the Legislature.[77]

**73.** See *Texas Ass'n of Bus.*, 852 S.W.2d at 444 ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties.").

**74.** See *id.*; see also *Springsteen*, 2013 WL 5305312, at *6, 2013 U.S. Dist. LEXIS 133971, at *19 (harm of being denied compensation under Chapter 103 not redressible through suit because "even a finding by this Court of Springsteen's actual innocence would not lead to his receipt of compensation under the statute, given that the statute requires such a finding take place in the context of a habeas corpus proceeding").

**75.** See *State v. Morales*, 869 S.W.2d 941, 946–48 (Tex. 1994).

**76.** See *In re Thompson*, 330 S.W.3d 411, 416 (Tex. App.–Austin 2010, orig. proceeding) (similarly rejecting argument that prosecuting district attorney lacked standing to seek recusal of trial judge in "ex parte" proceeding seeking UDJA declaration that Cameron Todd Willingham had been wrongfully convicted; UDJA "does not contemplate ex parte proceedings," but instead requires joinder of all "interested persons," and State, through district attorney, had interest because it "prosecuted Willingham and obtained a judgment of conviction" that claim sought to challenge); see also *Sawyer Trust*, 354 S.W.3d at 388 ("sovereign immunity will bar [even] an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity" (citing *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam)); *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 361 (Tex. App.–Austin 2009, pet. denied) ("the UDJA cannot be used as a vehicle to obtain declarations having the effect of establishing a right to relief against the State for which sovereign immunity has not been waived" (citing *Williams*, 216 S.W.3d at 828–29)).

**77.** See *Young*, 265 S.W.3d at 708.

## CONCLUSION

We affirm the district court's judgment dismissing Springsteen's claims for want of subject-matter jurisdiction.